THIRD DIVISION
August 25, 2010

1-10-1084

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | APPEAL FROM THE |
| VIKRAM AKULA, | ) | CIRCUIT COURT OF |
| | ) | COOK COUNTY |
|     Petitioner-Appellant, | ) | |
| | ) | |
|     and | ) | No. 01 D 15700 |
| | ) | |
| MALINI AKULA, n/k/a Malini Byanna, | ) | HONORABLE |
| | ) | PAMELA E. LOZA, |
|     Respondent-Appellee. | ) | JUDGE PRESIDING. |

JUSTICE STEELE  delivered the opinion of the court:

Following a hearing in the circuit court of Cook County, the trial court granted summary judgment to respondent Malini Akula on parts of a petition for declaratory and injunctive relief against her ex-husband Vikram Akula.  Subsequently, pursuant to Illinois Supreme Court Rule 308 (155 Ill. 2d R. 308), the circuit court certified the question of whether Illinois has exclusive and continuing jurisdiction over child custody determinations regarding their son, T.B.A., under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) (750 ILCS 36/101 <u>et seq</u>. (West 2006)) for appeal to this court.  For the following reasons, we answer the certified question in the negative.

BACKGROUND

The record discloses the following facts.  Vikram and Malini were married in Illinois on December 18, 1999.  Vikram is the chairman and founder of an Indian microfinance company. Malini is an attorney.  Their son, T.B.A., was born on February 16, 2001.

On December 4, 2002, the circuit court of Cook County entered a judgment of dissolution of marriage that awarded Malini sole custody of T.B.A. Subsequently, issues arose between Vikram and Malini regarding the raising of T.B.A. On August 19, 2005, the circuit court entered an agreed parenting order resolving those issues and acknowledging that Malini continued to have sole custody of T.B.A.

On December 12, 2008, Malini filed a petition to modify child support, alleging increases in the cost of raising T.B.A. and large increases in Vikram's income. On December 16, 2008, Malini filed a petition for an adjudication of indirect civil contempt against Vikram, regarding the production of his tax returns. On February 23, 2009, Vikram filed a response to the petition. As of this date, the circuit court has not ruled on Malini's petition, but it has entered an agreed order increasing child support without prejudice until the petition to modify child support was resolved. The petitions were set for a status hearing on October 13, 2009.

On June 18, 2009, the circuit court entered an agreed order memorializing plans for Vikram, Malini, and T.B.A. to travel to India. After spending some time in India, Vikram and Malini engaged in extensive negotiations contemplating Malini and T.B.A. staying in Hyderabad, India. On August 13, 2009, T.B.A. was enrolled in the International School of Hyderabad. T.B.A. currently attends that school. On August 17, 2009, Malini entered into a four-year lease for a home in India from Vikram's parent; the lease could be terminated on three months' notice and good cause. On September 5, 2009, Malini obtained a residential permit from the Indian government, extending through April 22, 2013.

Malini and T.B.A. returned to the house in Hoffman Estates, Illinois, for a week in September 2009. Malini contends that she was marketing the house in Hoffman Estates because Vikram agreed to purchase a house in Schaumburg, Illinois, for Malini and T.B.A.. The closing on the house in Schaumburg was set for October 16, 2009, but did not occur. The purchase contract for the Schaumburg property listed an address for Vikram in Palatine, Illinois (Malini's December 12, 2008, petition alleged that Vikram recently purchased a house in Palatine).

On October 7, 2009, Malini returned to Chicago to undergo back surgery and attend a continuing legal education conference. T.B.A. remained in school in India. Later on October 7, 2009, Vikram and Malini had an argument concerning T.B.A. On October 7 and 8, 2009, Malini sent several e-mail messages to Vikram, stating that she wanted T.B.A. returned to Illinois and that she considered the house in Hoffman Estates to be her and T.B.A.'s permanent residence.

On October 12, 2009, Vikram, without notice to Malini, filed two petitions in the family court in Hyderabad, India. The original petition (OP) sought sole custody of T.B.A. The second petition was an interlocutory application (IA) seeking interim injunctive relief. Later on October 12, 2009, the Indian family court entered an <u>ex parte</u> interim order, restraining anyone from disturbing the custody of T.B.A. in any manner, pending a disposition of the OP. Malini was later served with process in India with the Indian family court's order, as well as Vikram's petitions.

On October 13, 2009, Malini and Vikram's counsel appeared in circuit court for the previously set status hearing on Malini's petition to modify child support. The issue of the Indian family court order was first raised in the circuit court during this hearing.

On October 14, 2009, Malini filed a petition for an adjudication of indirect civil contempt in the circuit court. On October 15, 2009, Malini filed an emergency petition for a temporary restraining order, preliminary injunction and other relief, as well as a motion for the return of T.B.A. and an adjudication of indirect civil contempt in the circuit court. Malini sought to enjoin Vikram from obtaining or enforcing any order from a court other than the circuit court. On October 15, 2009, the circuit court entered an order stating: T.B.A. would not be withdrawn from school in Hyderabad, India and the circuit court would not be modifying the custody of T.B.A. or placing physical possession of T.B.A. with Malini. However, the circuit court ordered that Malini could be with T.B.A. three hours daily after school and have unsupervised visitation with T.B.A. overnight on Saturdays.

On October 20, 2009, Vikram filed an emergency motion to partially vacate the circuit court's order of October 15, 2009, and emergency petitions for a rule to show cause and adjudications of indirect civil and criminal contempt. Following a hearing on the motions, the circuit court entered an order providing that Malini's visitation with T.B.A. would be supervised. On October 21, 2009, Malini filed a notice of appeal to this court from the orders entered on October 15 and 20, 2009. On November 3, 2009, this court entered an order continuing Malini's appeal pending a circuit court ruling then expected on November 23, 2009, and directing the parties to file a status report no later than November 30, 2009. The parties filed status reports on November 30, 2009, December 18, 2009, and February 1, 2010.

On October 26, 2009, Malini filed two affidavits in the Indian family court in response to Vikram's petitions there. On October 31, 2009, Vikram and Malini appeared with T.B.A. in the

Indian family court. The Indian judge conducted an in camera interview with T.B.A. and spoke to counsel for both sides. The Indian family court entered an agreed order concerning child visitation, providing in part that neither side could cite the order as precedent.

On November 2, 2009, Vikram filed an emergency petition in the circuit court for a declaratory judgment and a motion to dismiss Malini's emergency petition. On November 17, 2009, Malini filed her response to Vikram's petition.

On November 3, 2009, the circuit court's appointed child representative filed a motion for presentment of T.B.A. in Illinois. On November 10, 2009, both parties responded to the representative's motion. On November 19, 2009, the circuit court granted the representative's motion. On November 23, 2009, Vikram filed an emergency motion to reconsider the order requiring the presentment of T.B.A., which the circuit court denied the following day.

On November 13, 2009, the circuit court attempted to hold a telephone conference with the Indian family court in Hyderabad, but there was no meaningful communication between the judges. The circuit court requested another telephone conference, but was unsuccessful in completing one. Vikram's counsel claimed there were ethical issues regarding the parties' Indian counsel being present for the conference.

On November 19, 2009, Vikram and Malini appeared in the Indian family court for a hearing on Vikram's IA.

On November 23, 2009, Malini moved for summary judgment in the circuit court on Vikram's November 2, 2009, petition. Malini argued the circuit court had continuing exclusive jurisdiction over custody of T.B.A. under the UCCJEA (750 ILCS 36/101 et seq. (West 2006)).

On November 24, 2009, the Indian family court issued a 62-page order finding that Vikram, Malini and T.B.A. "are now ordinarily residing in Hyderabad which is within the territorial jurisdiction of the Family court, Hyderabad." The Indian family court order converted the interim order of October 12, 2009, into an injunction enjoining Malini or anyone else from disturbing the custody of T.B.A. The Indian family court also ordered that T.B.A., who was in the equivalent of the third grade, may not be removed from school in Hyderabad until he completes at least the fifth grade.

On December 2, 2009, Vikram moved for summary judgment from the circuit court or, in the alternative, registration of the Indian court orders and the dismissal of Malini's emergency petition. Vikram argued the Indian family court order was dispositive of the jurisdictional issue.

On December 14, 2009, Vikram filed two additional petitions in the Indian family court. The first petition concerned allegedly inappropriate communications between Malini and T.B.A. The second petition sought to enjoin Malini from filing or pursuing any child custody or visitation petitions in any court other than the Indian family court in Hyderabad.

On December 15, 2009, Malini filed a petition for declaratory and injunctive relief in the circuit court. Malini sought a declaration that the Indian family court did not act in substantial conformity with the UCCJEA and failed to comply with the jurisdictional standards of the UCCJEA, and its proceedings violated fundamental human rights under the UCCJEA. Malini also sought to enjoin Vikram from proceeding in the Indian courts.

On December 22, 2009, Vikram filed an amended petition for declaratory relief or registration of the Indian family court orders and the dismissal of Malini's emergency petition.

On December 29, 2009, Malini filed three petitions in the High Court of Adjudicature for the State of Andhra Pradesh (the High Court), which has jurisdiction over the orders entered by the Indian family court in Hyderabad. The same day, the High Court stayed all further proceedings at the trial court level.

On January 5, 2010, Vikram filed a petition for leave to appeal and an application for a stay of the High Court's order in the Indian Supreme Court. The Indian Supreme Court granted a stay of the High Court's habeas corpus order. Malini also filed a special application for leave to appeal the family court's November 24, 2009, order directly to the Indian Supreme Court.

On February 23, 2010, Vikram moved for summary judgment on his amended petition in the circuit court. On February 24, 2010, Malini moved for summary judgment on her petition for declaratory and injunctive relief. On March 2, 2010, both parties filed responses to each other's motions.

On March 30, 2010, the circuit court entered an order granting Malini summary judgment on the issue of jurisdiction, concluding that: (1) Illinois was the residence of Malini and T.B.A.; (2) Illinois has continuing, exclusive jurisdiction over the parties and subject matter under the UCCJEA; and (3) the Indian family court in Hyderabad failed to find that Malini and T.B.A. no longer resided in Illinois. The circuit court also ruled that the proceedings in the Indian family court in Hyderabad were not being conducted in substantial conformity with the jurisdictional standards of the UCCJEA, rendering the Indian court's orders unrecognizable and unenforceable under section 105 of the UCCJEA (750 ILCS 36/105 (West 2006)). The circuit court denied Malini's motion for a declaration that the proceedings in the Indian family court in Hyderabad

violate fundamental principles of human rights under section 105(c) of the UCCJEA (750 ILCS 36/105(c) (West 2006)). The circuit court further denied Vikram's amended petition for declaratory relief or registration of the Indian court orders and the dismissal of Malini's emergency petition.

On April 5, 2010, Vikram moved for a finding of no just reason to delay enforcement or appeal of the March 30, 2010, order, pursuant to Supreme Court Rule 304(a) (210 Ill. 2d R. 304(a)), or for a certification of the question of the propriety of the order pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308). On April 14, 2010, the circuit court granted the motion, certifying the following question for appeal to this court:

> "Did the Circuit Court properly rule that Illinois has exclusive and continuing jurisdiction because the Indian family court did not make a judicial determination in substantial conformity with subsection 202(a)(2) of the UCCJEA?"

On April 23, 2010, Vikram filed his Rule 308 petition for leave to appeal and a motion for a stay. On April 30, 2010, this court granted Vikram's motion to stay proceedings in the circuit court. On May 13, 2010, this court granted Vikram's petition for leave to appeal and placed the appeal on an accelerated docket.

## DISCUSSION

The circuit court's certified question raises the sole issue for review in this interlocutory appeal. To qualify for an interlocutory appeal under Supreme Court Rule 308 (155 Ill. 2d R. 308), a certified question must present an issue of law that is reviewable de novo. Solon v. Midwest Medical Records Ass'n, 236 Ill. 2d 433, 439, 925 N.E.2d 1113, 1117 (2010). The

certified question here is one of statutory construction, which is a question of law subject to <u>de novo</u> review. <u>Solon</u>, 236 Ill. 2d at 439, 925 N.E.2d at 1117.

Under the UCCJEA, a child custody determination made in a foreign country under factual circumstances in substantial conformity with the jurisdictional standards of this Act must be recognized and enforced, unless the child custody law of the foreign country violates fundamental principles of human rights. 750 ILCS 36/105 (West 2006). In this case, the circuit court determined that Indian child custody law did not violate fundamental principles of human rights; that determination is not before this court in this appeal. The sole issue on appeal is the circuit court's interpretation of section 202(a)(2) of the UCCJEA, which provides in relevant part:

"(a) Except as otherwise provided in Section 204, a court of this State which has made a child-custody determination consistent with Section 201 or 203 has exclusive, continuing jurisdiction over the determination until:

\*\*\*

(2) a court of this State or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this State." 750 ILCS 36/202(a)(2) (West 2006).

Our primary objective in interpreting a statute is to ascertain and give effect to the intent of the legislature. <u>Solon</u>, 236 Ill. 2d at 440, 925 N.E.2d at 1117. The most reliable indicator of such intent is the language of the statute, which is to be given its plain and ordinary meaning. <u>Solon</u>, 236 Ill. 2d at 440, 925 N.E.2d at 1117. In determining the plain meaning of the statute, we consider the statute it its entirety, the subject it addresses, and the apparent intent of the

1-10-1084

legislature in enacting it. <u>Solon</u>, 236 Ill. 2d at 440, 925 N.E.2d at 1117. When the statutory language is clear and unambiguous, it must be applied as written and without resort to extrinsic aids of statutory construction. <u>Solon</u>, 236 Ill. 2d at 440, 925 N.E.2d at 1117. "However, if a statute is capable of being understood by reasonably well-informed persons in two or more different ways, the statute will be deemed ambiguous." <u>Solon</u>, 236 Ill. 2d at 440, 925 N.E.2d at 1117. If the statute is ambiguous, the court may consider extrinsic aids of construction in order to discern the legislative intent. <u>Solon</u>, 236 Ill. 2d at 440, 925 N.E.2d at 1117.

In this case, the issue is whether the Indian family court's order substantially conforms to the UCCJEA. The relevant paragraph of the Indian family court's November 24, 2009, order provides:

"As already mentioned supra, the residence and stay of the petitioner and respondent and their plan for future stay for a period of four years, i.e., up to the year 2013 it can be safely held that they are now ordinarily residing in Hyderabad which is within the territorial jurisdiction of the Family court, Hyderabad. On this ground it can be said that both petitioner and respondent as well as the minor child are residing within the jurisdiction of this Court with the consent of both the petitioner and respondent, that too, in respect of the education of their minor son Master [T.B.A.] Thus, the facts of the above decision are squarely applicable to the facts of the case on hand."

The circuit court, while acknowledging there is no requirement that the Indian court make its finding in the exact phrasing of section 202(a)(2) of the UCCJEA (750 ILCS 36/202(a)(2) (West 2006)), concluded that the finding that the parties are "now ordinarily residing" in Hyderabad did

-10-

not substantially conform to finding that the child, the child's parents, and any person acting as a parent "do not presently reside" in Illinois.

In reaching this conclusion, the circuit court relied on a definition of "residence" taken from Miller v. Police Board, 38 Ill. App. 3d 894, 898, 349 N.E.2d 544, 548 (1976), as applied in Connelly v. Gibbs, 112 Ill. App. 3d 257, 262-64, 445 N.E.2d 477, 480-82 (1983), a case holding that parents were residents of Chicago, rather than Skokie, for purposes of their child's school registration. However, in Fagiano v. Police Board, 98 Ill. 2d 277, 456 N.E.2d 27 (1983), the Illinois Supreme Court discussed Miller and the definition of "residence" in general:

> "It is true, as was pointed out in Reese & Green, That Elusive Word, 'Residence', 6 Vand. L. Rev. 561 (1953), which the plaintiffs have cited, that 'residence' as a legal term, while commonly used in statutes, does not, unlike 'domicile,' have a fixed and constant meaning. The authors show that it is a variable term, the meaning of which courts must ascertain from the purposes of the statute or ordinance, although in most cases it has been construed to be synonymous with domicile (6 Vand. L. Rev. 561, 561-62.) The authors provide examples of the term's being interpreted differently in various contexts, such as in statutes concerning divorce jurisdiction and income taxation."
> Fagiano, 98 Ill. 2d at 282-83, 456 N.E.2d at 29.

The residence requirement in Fagiano was identical to that at issue in Miller. Fagiano, 98 Ill. 2d at 285, 456 N.E.2d at 30. The Fagiano court ruled that in the context there, "residence" was intended to be synonymous with "domicile." Fagiano, 98 Ill. 2d at 283, 456 N.E.2d at 29.

1-10-1084

Given that the concept of residence does not have a fixed and constant meaning, the question is whether the circuit court correctly used a definition synonymous with "domicile" in the context of jurisdiction under the UCCJEA. The official comment to section 202 of the UCCJEA states in part:

"2. Continuing jurisdiction is lost when the child, the child's parents, and any person acting as a parent no longer reside in the original decree State. The exact language of subparagraph (a)(2) was the subject of considerable debate. Ultimately the Conference settled on the phrase that 'a court of this State or a court of another State determines that the child, the child's parents, and any person acting as a parent do not presently reside in this State' to determine when the exclusive, continuing jurisdiction of a State ended. The phrase is meant to be identical in meaning to the language of the PKPA [the federal Parental Kidnapping Prevention Act] which provides that full faith and credit is to be given to custody determinations made by a State in the exercise of its continuing jurisdiction when that 'State remains the residence of.... ' The phrase is also the equivalent of the language 'continues to reside' which occurs in UIFSA [Uniform Interstate Family Support Act] § 205(a)(1) to determine the exclusive, continuing jurisdiction of the State that made a support order. The phrase 'remains the residence of' in the PKPA has been the subject of conflicting case law. It is the intention of this Act that paragraph (a)(2) of this section means that the named persons no longer continue to actually live within the State. Thus, unless a modification proceeding has been

commenced, when the child, the parents, and all persons acting as parents physically leave the State to live elsewhere, the exclusive, continuing jurisdiction ceases.

The phrase 'do not presently reside' is not used in the sense of a technical domicile. The fact that the original determination State still considers one parent a domiciliary does not prevent it from losing exclusive, continuing jurisdiction after the child, the parents, and all persons acting as parents have moved from the State.

If the child, the parents, and all persons acting as parents have all left the State which made the custody determination prior to the commencement of the modification proceeding, considerations of waste of resources dictate that a court in State B, as well as a court in State A, can decide that State A has lost exclusive, continuing jurisdiction.

The continuing jurisdiction provisions of this section are narrower than the comparable provisions of the PKPA. That statute authorizes continuing jurisdiction so long as any 'contestant' remains in the original decree State and that State continues to have jurisdiction under its own law. This Act eliminates the contestant classification." Uniform Child Custody Jurisdiction and Enforcement Act, 9 U.L.A. §202, Comment, at 674-75 (1999).

Thus, it is clear that the drafters of the UCCJEA did not intend that "residence" be equated with "domicile" in this context. See, e.g., In re Marriage of Nurie, 176 Cal. App. 4th 478, 500 n.23, 98 Cal. Rptr. 3d 200, 219 n.23 (2009).

The circuit court reasoned that its conclusion was consistent with the holding in Nurie, where the California Court of Appeal stated that "a judicial determination that all parties no

longer reside in the decree state is required to divest that state of continuing, exclusive jurisdiction," and that it is only "when a 'court *** determines' that all parties have ceased residing there that jurisdiction is lost." Nurie, 176 Cal. App. 4th at 500-01, 98 Cal. Rptr. 3d at 220, quoting Cal. Fam. Code §3422(a)(2). These aspects of Nurie merely restate the requirements of section 202(a)(2) of the UCCJEA, but offer no additional guidance on the issue of whether the Indian family court's finding substantially conformed to those requirements.

Malini relies on stronger language from Nurie that was not adopted by the circuit court:

"It is well established that a party may have more than one residence. ( In re Marriage of Amezquita & Archuleta, [101 Cal. App. 4th 1415, 1419, 124 Cal. Rptr. 2d 887, 889 (2002)].) Thus, Husband could have 'presently resided' in Pakistan for some time while still maintaining a 'present residence' in California. Under section 3422, subdivision (a)(2), the decree state retains jurisdiction until all residential ties of the parties are abandoned. While a parent's bare intent to return to the decree state may not be sufficient for retention of jurisdiction if he has otherwise moved from the state, we hold that if he maintains a functioning residence in the decree state, available for his own use at all times, he continues to 'presently reside' in that state." Nurie, 176 Cal. App. 4th at 500, 98 Cal. Rptr. 3d at 219-20.

In Amezquita, the California court addressed the difference between domicile and residence:

" 'Courts and legal writers usually distinguish "domicile" and "residence," so that "domicile" is the one location with which for legal purposes a person is considered to have the most settled and permanent connection, the place where he intends to remain

and to which, whenever he is absent, he has the intention of returning, but which the law may also assign to him constructively; whereas "residence" connotes any factual place of abode of some permanency, more than a mere temporary sojourn. "Domicile" normally is the more comprehensive term, in that it includes both the <u>act</u> of residence and an <u>intention</u> to remain; a person may have only one domicile at a given time, but he may have more than one physical residence separate from his domicile, and at the same time. [Citations.] But statutes do not always make this distinction in the employment of those words. They frequently use "residence" and "resident" in the legal meaning of "domicile" and "domiciliary," and at other times in the meaning of factual residence or in still other shades of meaning. [Citations.]' " (Emphasis in original.) <u>Amezquita</u>, 101 Cal. App. 4th at 1419, 124 Cal. Rptr. 2d at 889, quoting <u>Smith v. Smith</u>, 45 Cal. 2d 235, 239, 288 P.2d 497, 499 (1955).

The <u>Nurie</u> court does not explain how the fact that a person may own, lease or otherwise maintain more than one physical residence compels the conclusion that a person "presently resides" in all of them simultaneously. The drafters of the UCCJEA intended that a parent could be considered a domiciliary of the decree state and yet not presently reside in the decree state. The drafters of the UCCJEA intended that exclusive, continuing jurisdiction ceases when a court determines that the child, the parents, and all persons acting as parents physically left the decree state to live elsewhere. Accordingly, we are not persuaded by this aspect of <u>Nurie</u>.

Malini suggests that a literal interpretation of the phrase "presently reside" would allow for parties to engage in mischievious forum-shopping, leading to unjust results. She gives the

hypothetical example of two divorced parents living in Illinois, but with summer homes in Wisconsin. Malini suggests that "[a]fter only one or two days' residency in their summer homes, a parent could ask a Wisconsin court to assume jurisdiction over custody merely because the parents and the child are now presently in Wisconsin." However, as our earlier discussion demonstrates, residing connotes some degree of permanency beyond a temporary sojourn. Conversely, Malini's hypothetical illustrates the flaw in assuming that a person "presently resides" in any jurisdiction where that person owns a home.

The circuit court also looked to section 26 of the Restatement (Second) Conflict of Laws, for the principle that if a state obtains judicial jurisdiction over a party to an action, jurisdiction continues throughout all subsequent proceedings which arise out of the original cause of action. Restatement (Second) of Conflict of Laws §26 (1971). Neither the circuit court nor the parties cite any authority for the proposition that this general principle overrides the operation of the UCCJEA as enacted in Illinois. The drafters of the UCCJEA state in the comment to section 202:

> "Jurisdiction attaches at the commencement of a proceeding. If State A had jurisdiction under this section at the time a modification proceeding was commenced there, it would not be lost by all parties moving out of the State prior to the conclusion of proceeding. State B would not have jurisdiction to hear a modification unless State A decided that State B was more appropriate under Section 207." 9 U.L.A. §202, Comment, at 675 (1999).

The circuit court correctly noted that Malini's petitions to increase child support and for a finding of indirect civil contempt were pending in the circuit court when Vikram filed his action in the Indian family court. However, neither petition involves a child custody determination under section 102(3) of the UCCJEA nor constitutes a child custody proceeding under section 102(4) of the UCCJEA. 750 ILCS 36/102(3), (4) (West 2006). Accordingly, the argument for continuing jurisdiction in Illinois fails.

On March 30, 2010, the circuit court ultimately ruled:

"[T]he Indian court did not make the requisite finding under Section 202(a) because[:] (1) 'ordinarily residing' under the totality of the factual circumstances does not meet the requirements[;] and (2) the Indian court failed to find that the parties and the child are not presently residing in Illinois. In conclusion, the Indian order was not entered 'under factual circumstances in substantial conformity' with the UCCJEA and thus, this court is not required to recognize and enforce the November 24, 2009 Indian court order."

We disagree. The Indian family court did not merely find that the parties were "ordinarily residing" in Hyderabad. Rather, the Indian family court, after reviewing the record, found that they are "now ordinarily residing" in Hyderabad. (Emphasis added.) The plain meaning of the finding is that the parties are presently in Hyderabad, with the modifier "ordinarily" reflecting that their presence was not temporary or transient. Although section 202(a)(2) of the statute refers to a determination that the parties and child "do not presently reside" in Illinois, the drafters of the UCCJEA meant this to be identical in meaning to the language of the PKPA giving full faith and credit to custody determinations when that state "remains the residence of"

the parties and child, and the equivalent of the language "continues to reside" as used in section 205(a)(1) of the UIFSA. 9 U.L.A. §202, Comment, at 674 (1999). Thus, the negative phrasing of section 202(a) does not have the determinative effect given it by the circuit court.

Based on the text of section 202(a) and the intent of its drafters, we conclude that the Indian family court's finding that the parties and child are "now ordinarily residing" in Hyderabad necessarily implied that they did not presently reside in Illinois. Cf. In re T.J.D.W., 182 N.C. App. 394, 396-97, 642 S.E.2d 471, 473 (2007) (specific finding of fact not required to satisfy section 203 of the UCCJEA where the evidence showed that the parents and child lived in North Carolina and that they had left South Carolina at the time of the commencement of the proceeding). The Indian family court thus acted in substantial conformity with the jurisdictional requirements of the UCCJEA as enacted in Illinois. The reference to "factual circumstances" in section 105 of the UCCJEA merely means that "[c]ustody determinations of other countries will be enforced if the facts of the case indicate that jurisdiction was in substantial compliance with the requirements of this Act." 9 U.L.A. §105, Comment, at 662 (1999). It is not a mechanism for relitigation or review of another court's fact determinations. See In re Sophia G.L., 229 Ill. 2d 143, 165, 890 N.E.2d 470, 483 (2008), citing 9 U.L.A. §101, Comment, at 657 (1999).

## CONCLUSION

For all of the aforementioned reasons, we answer the certified question in the negative. The circuit court erred in ruling that Illinois has exclusive and continuing jurisdiction over child

custody in this case.  We remand the cause to the circuit court for further proceedings consistent with this opinion.

Certified question answered; cause remanded.

MURPHY, P.J., and QUINN, J., concur.

REPORTER OF DECISIONS – ILLINOIS APPELLATE COURT
(Front Sheet to be Attached to Each Case)

| Please Use Following Form: | |
|---|---|
| Complete TITLE of Case | *In re* Marriage of<br><br>VIKRAM AKULA,<br><br>    Petitioner-Appellant,<br><br>v.<br><br>MALINI AKULA, n/k/a Malini Byanna,<br><br>    Respondent-Appellee. |
| Docket No.<br><br>COURT<br><br><br>Opinion Filed | No. 1-10-1084<br>Appellate Court of Illinois<br>First District, THIRD Division<br><br>August 25, 2010<br>(Give month, day and year) |
| JUSTICES | JUSTICE STEELE delivered the opinion of the court:<br><br>Murphy, P.J., and Quinn, J.,     concur<br><br>    dissent[s] |
| APPEAL from the Circuit Ct. of Cook County, Chancery Div. | Lower Court and Trial Judge(s) in form indicated in the margin:<br>Circuit Ct. of Cook County, Domestic Relations Div.<br>The Honorable Pamela E. Loza, Judge Presiding. |
| For APPELLANTS, John Doe, of Chicago.<br><br><br><br>For APPELLEES, Smith and Smith of Chicago, Joseph Brown, (of Counsel)<br><br>Also add attorneys for third-party appellants or appellees. | Indicate if attorney represents APPELLANTS or APPELLEES and include attorneys of counsel. Indicate the word NONE if not represented.<br>Attorneys for **Petitioner-Appellant**:    Lake Toback, of Chicago, IL<br>    (Michael G. DiDomenico, of Counsel)<br><br>Attorneys for **Respondent-Appellee**:    Grund & Leavitt, P.C., of Chicago, IL<br>    (Marvin J. Leavitt, David C. Adams, Richard A. Wilson, and Jamie R. Roman, of Counsel) |