NOTICE
Decision filed 12/11/15. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2015 IL App (5th) 150078

NO. 5-15-0078

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| ANTHONY GORUP, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Montgomery County. |
| | ) | |
| v. | ) | No. 13-MR-143 |
| | ) | |
| QUINIQUE J. BRADY, | ) | Honorable |
| | ) | Douglas L. Jarman, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE SCHWARM delivered the judgment of the court, with opinion.
Justices Welch and Stewart concurred in the judgment and opinion.

**OPINION**

¶ 1     Quinique J. Brady appeals from the circuit court's decision awarding custody of her child, A.G., to A.G.'s father, Anthony Gorup. Quinique argues that the circuit court lacked subject-matter jurisdiction over this case, that the circuit court failed to follow the procedures necessary to obtain temporary emergency jurisdiction over the matter, and that the circuit court's custody determination was against the manifest weight of the evidence. We hold that the circuit court properly exercised temporary emergency jurisdiction and affirm in part on that basis. However, because we hold that the circuit court failed to follow the statutory criteria for temporary emergency modification and

1

failed to properly exercise its authority in ordering permanent modification, we vacate the actions of the circuit court and remand with instructions.

¶ 2                                    BACKGROUND

¶ 3    Quinique and Anthony married in March 2005 in Deridder, Louisiana. They had one child, A.G., born on September 3, 2007. On June 27, 2011, the parties' marriage was dissolved in the Ninth Judicial Circuit, Parish of Rapides, Louisiana. Under the joint dissolution of marriage, Quinique was designated as the primary domiciliary parent. Anthony was granted visitation for one month in the summer and every other holiday, as well as "at any time during the year when he is able to exercise custody while on leave."

¶ 4    Quinique is a pipefitter. Prior to trial, Quinique's work as a pipefitter routinely took her to various states for work assignments. During those assignments, she maintained a residence in Boyce, Louisiana. When Quinique traveled for work, she frequently would leave A.G. with Anthony whenever she believed it to be in A.G.'s best interest. Anthony has been in the Army National Guard for approximately 20 years, and he has been a Readiness NCO in Litchfield, Illinois, for the past eight years. Prior to around October 30, 2013, Quinique and Anthony amicably accommodated each other's work requirements with regards to A.G.'s custody.

¶ 5    In August 2012, Quinique began working in North Dakota. Sometime during her stay in North Dakota, Quinique met her boyfriend, Leslie David Lee. In June of 2013, Quinique informed Anthony that she would be following Lee to Pennsylvania for work. Quinique asserts that this move was to be temporary and that both she and Lee expected to move to Texas for work thereafter. Anthony asserts that she told him "she would be

2

moving to Pennsylvania for a permanent job with her boyfriend."

¶ 6    In August 2013, Quinique moved with Lee to Texas for work.  Anthony asserts that she again told him she was leaving "for another permanent job."  While en route to Texas, Quinique met Anthony in Nashville, Tennessee.  During this meeting, she placed A.G. with Anthony.  Anthony asserts that, during this exchange, Quinique told him that Lee did not want A.G. around and that she was seeking a way out of her relationship with Lee.  Anthony further asserts that Quinique stated she hoped to move to Springfield, Illinois, or St. Louis, Missouri, in order to help normalize A.G.'s visitation with his father.  Quinique maintained that the idea of moving closer was discussed only "in passing" and "was never a serious conversation."  Prior to or during this exchange, Quinique and Anthony agreed that Anthony would enroll A.G. in school in Illinois for the fall 2013 semester.  Quinique then left with Lee to begin work in Texas.

¶ 7    On October 26, 2013, Lee was murdered in Waco, Texas, while Quinique was present.  Quinique was also beaten during the murder, and she spent two days in the hospital recovering.  Anthony asserts that Quinique called him and A.G. shortly thereafter to inform them of what had happened.  After searching online, Anthony found stories suggesting that Lee had died during a drug deal.  Anthony also contacted a Waco, Texas, police detective working on the case to verify what he saw online.  On October 30, 2013, based upon this information, Anthony filed a verified petition for an order of protection in the circuit court of the Fourth Judicial Circuit, Montgomery County, Illinois, which was given case number 2013-OP-255.  Anthony listed himself, A.G., and Anthony's current wife as persons desiring protection from Quinique.  In this petition,

3

Anthony asked the court to enter an order that, among other relief, prevented Quinique from contacting or being present near himself, his wife, or A.G. Anthony listed Quinique's address as "3541 Hwy 121, Boyce, LA 71409." Anthony also used that address for the purpose of serving summons to Quinique in the order of protection case. In the petition Anthony listed Quinique's work address as "near San Antonio TX." Though the record does not contain the relevant order, it appears from the record that the circuit court granted Anthony's request for an emergency order of protection and set for hearing his request for entry of a plenary order.

¶ 8    On November 18, 2013, the circuit court held a hearing in the order of protection case, 2013-OP-255, on Anthony's request for entry of a plenary order of protection. Anthony appeared with counsel, while Quinique appeared *pro se*. When asked at the hearing, Quinique stated she resided in Boyce, Louisiana. During the course of the hearing, Quinique was served in open court with a summons on a petition to enroll judgment and request for emergency temporary modification of custody that Anthony had just filed. This petition initiated in the circuit court 2013-MR-143, the case on appeal. In this petition, Anthony asked the court to enroll the Louisiana divorce judgment and custody arrangement and enter a temporary modification of custody. The petition further claimed that "[n]o party to this proceeding *** resides in the State of Louisiana." On the affidavit of service for this summons, Quinique's address was listed as unknown. The circuit court explained to Quinique the status of the two cases and the nature of the hearing before granting a recess for her to decide whether to retain counsel before proceeding. After recess, Quinique elected to proceed *pro se* for the hearing in the

4

order of protection case.

¶ 9    At this hearing, Anthony testified regarding the phone call from Quinique regarding the murder, the Internet stories he found, and his discussions with the detective. According to Anthony, he had learned that Quinique and Lee were attempting to sell prescription drugs, Lee reached for a gun, and Lee was subsequently shot and killed. Anthony also stated he had been told Quinique was thrown on the ground and her purse was stolen. Anthony further stated he had been told the police lacked sufficient evidence to charge her with any crime. Anthony admitted he had no knowledge that suggested Quinique had been involved in drug-related activities prior to this incident.

¶ 10    Quinique testified that she and Lee had gone to Waco to visit his mother and then a friend of his that she had not previously met. She admitted she had a bottle containing Lee's prescription for Xanax in her purse. When they went to visit the friend, she saw two men outside the apartment building they were visiting. One of these men pulled a gun and shot Lee. She was also severely beaten by these men. The men took Lee's phone, Lee's wallet, Quinique's purse, and Quinique's wallet. On cross-examination, Quinique was confronted with documents suggesting that Lee was a prescription drug dealer. However, Quinique flatly denied this accusation.

¶ 11    After hearing testimony, the court recommended that the order of protection be denied, that the parties agree to Anthony receiving temporary custody of A.G., and that the parties reconvene for a full hearing with counsel on the modification of custody issue. The court then granted a recess for the parties to consider this recommendation. Upon reconvening, the parties agreed to the recommendation. The circuit court then enrolled

5

the Louisiana judgment and granted the motion for temporary modification of custody in 2013-MR-143. The petition for entry of a plenary order of protection was denied and 2013-OP-255 closed. The court further scheduled a conference call in 2013-MR-143 for December 18, 2013, with the goal of having a full hearing "in somewhere between 30 and 90 days." On November 20, 2013, the court entered an order memorializing its actions. In that order, the court stated that "[t]he Court has jurisdiction to enter a custody determination in this matter."

¶ 12  The court did not have a hearing in the designated timeframe. However, Quinique did retain counsel, and her counsel entered his appearance on February 25, 2014. Meanwhile, the case was delayed numerous times. On September 24, 2014, Quinique filed a motion to vacate the November 20, 2013, temporary order. On December 1, 2014, the circuit court heard arguments regarding the motion to vacate. Among other arguments, Quinique asserted that the circuit court could not enter the temporary order because it lacked subject-matter jurisdiction. Quinique argued that because Louisiana entered the initial custody order, and she still resided in Louisiana, only Louisiana could modify the child custody arrangement. Further, Quinique argued that the circuit court had failed to follow the requirements of the Uniform Child-Custody Jurisdiction and Enforcement Act (750 ILCS 36/101 *et seq.* (West 2014)) necessary to issue a temporary order. The court asked if the procedural requirements could be waived, and her attorney responded that they could not be waived as they were necessary for jurisdiction.

¶ 13  Anthony argued that Quinique had ceased to reside in Louisiana and that therefore the circuit court could modify the child custody arrangement and issue a temporary order.

6

However, Anthony agreed that if Quinique did reside in Louisiana, then the circuit court would lack subject-matter jurisdiction. On December 24, 2014, the circuit court denied the motion to vacate in a docket entry order. The entry stated that "[b]y agreeing to the entry of the temporary order, [Quinique] also agreed to the court exercising jurisdiction to enter the order." The entry further stated that "[i]t is clear the court in entering the November 20, 2013 order was exercising its jurisdiction under 750 ILCS 35/4(a)(3)." "750 ILCS 35/4(a)(3)" is a cite to the Uniform Child Custody Jurisdiction Act, which was entirely repealed on January 1, 2004, and not in effect on December 24, 2014, at the time the order was entered.

¶ 14    On January 6, 2015, Anthony filed a petition for modification of custody in 2013-MR-143. Anthony did not request leave to file this petition. In it, Anthony sought primary physical custody of A.G., with reasonable visitation for Quinique, as well as for Quinique to pay reasonable child support. During the hearing held in January 2015, Quinique presented evidence that she resided at all times in Louisiana and continuously maintained water and electricity at her Boyce, Louisiana, residence. She further testified that her job required travel and that she "always returned to [her] home in Boyce, Louisiana," whenever she finished a job elsewhere. Quinique maintained that she had never permanently resided anywhere except Boyce, Louisiana.

¶ 15    On cross-examination, Quinique was confronted with an October 27, 2013, statement that she gave to the Waco police department as part of the investigation into Lee's murder. The report lists an address in Kennedy, Texas, as Quinique's address, though the Boyce, Louisiana, address is also on the report. The report states in part that

Quinique and Lee "made an agreement *** for exchange of sexual services for Xannex [*sic*]," that Quinique and Lee were at the apartment complex where he was murdered to exchange 1,000 Xanax, and that the Xanax to be exchanged were in Quinique's purse at the time it was stolen. Quinique signed and dated the police report on several pages. Quinique stated she "[didn't] remember giving a statement." She further claimed that she did not recall most of what was stated in the report.

¶ 16    Anthony also testified at the hearing. On cross-examination, Anthony admitted that pipefitters like Quinique "tend to go where the work is located," that Quinique lived in Boyce, Louisiana, and that she had lived in Boyce, Louisiana, since at least November 18, 2013. Anthony also admitted that, to his knowledge, Quinique had never been charged with any crime for her presence at the alleged drug deal where Lee was murdered.

¶ 17    On January 30, 2015, the circuit court entered an order granting Anthony's petition for modification. Anthony was granted primary physical custody of A.G., and Quinique was granted visitation. On February 26, 2015, Quinique filed her notice of appeal.

¶ 18                                    ANALYSIS

¶ 19    On appeal, Quinique argues that the circuit court erred because it lacked subject-matter jurisdiction and thus could not modify the Louisiana judgment. Illinois enacted the Uniform Child-Custody Jurisdiction and Enforcement Act (UCCJEA) (750 ILCS 36/101 *et seq.* (West 2014)) in order "to end custody jurisdictional disputes between states, to promote cooperation between states in determining custody issues, and to enhance the ability of states to enforce custody orders expeditiously." *In re Joseph V.D.*,

373 Ill. App. 3d 559, 561 (2007). In *McCormick v. Robertson*, the Illinois Supreme Court clarified that "[a]s used in the [UCCJEA], *** 'jurisdiction' must be understood as simply a procedural limit on when the court may hear initial custody matters, not a precondition to the exercise of the court's inherent authority." *McCormick v. Robertson*, 2015 IL 118230, ¶ 27. The court held that "[i]t could not be more, for as we have held, that authority emanates solely from article VI, section 9, of our constitution (Ill. Const. 1970, art. VI, § 9)." *Id.* The court held that the determination of custody is a "justiciable matter" that falls within the subject-matter jurisdiction of the circuit court. *Id.* ¶ 28. "Once a court has subject matter jurisdiction over a matter, its judgment will not be rendered void nor will it lose jurisdiction merely because of an error or impropriety in its determination of the facts or application of the law." *Id.* Following the reasoning in *McCormick*, we conclude that the court had subject-matter jurisdiction to entertain Anthony's petition for a temporary order and his petition for permanent modification.

¶ 20    However, while the circuit court had subject-matter jurisdiction, it still had a duty to follow the UCCJEA in exercising its authority. " '[T]he constitutional source of a circuit court's jurisdiction does not carry with it a license to disregard the language of a statute.' " *McCormick*, 2015 IL 118230, ¶ 22 (quoting *In re M.M.*, 156 Ill. 2d 53, 75 (1993) (Miller, C.J., concurring, joined by Bilandic, J.)). We thus review the circuit court's application of the UCCJEA to Anthony's petitions, starting with temporary emergency jurisdiction.

¶ 21                    I. Temporary Emergency Jurisdiction

¶ 22    Quinique argues that the circuit court lacked temporary jurisdiction under the

9

UCCJEA. We disagree. Under section 204 of the UCCJEA, the circuit court "has temporary emergency jurisdiction if the child is present in this State and *** it is necessary in an emergency to protect the child because the child *** is subjected to or threatened with mistreatment or abuse." 750 ILCS 36/204(a) (West 2014).

¶ 23    Nevertheless, "[i]f there is a previous child-custody determination that is entitled to be enforced under this Act, *** any order issued by a court of this State under this Section must specify in the order a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having jurisdiction." 750 ILCS 36/204(c) (West 2014). The court must also, "upon being informed that *** a child-custody determination has been made by[ ] a court of a state having jurisdiction ***[,] immediately communicate with the other court" "to resolve the emergency, protect the safety of the parties and the child, and determine a period for the duration of the temporary order." 750 ILCS 36/204(d) (West 2014).

¶ 24    Here, no party disputes that A.G. was present in the state at the start of this case because he had been enrolled in school in Illinois when this case began. In granting the emergency order of protection, the court found evidence of an emergency and threats of abuse. Quinique had been present when Lee was killed during a failed drug deal. After the murder, Quinique was severely beaten and robbed by perpetrators of Lee's murder. The information presented at the hearing suggested that Quinique was there to help Lee sell prescription drugs. The October 27, 2013, police statement, though not admitted at the November 18, 2013, hearing, confirmed this suggestion. Even Quinique agreed to the entry of a temporary order in order to resolve some of these issues at the November 18,

2013, hearing. Given the evidence adduced at the hearing, the circuit court properly exercised its authority by entering a temporary emergency order modifying custody that met the requirements of section 204(a) of the UCCJEA because an emergency existed and A.G. was threatened with mistreatment or abuse under the original custody arrangement.

¶ 25    Nonetheless, the circuit court failed to otherwise specify a period adequate for Anthony to seek a Louisiana order regarding the change in custody. See 750 ILCS 36/204(c) (West 2014). While the court suggested that hearings normally would take place within 30 to 90 days, the court did not schedule a hearing or otherwise take action to ensure that a hearing would occur in that timeframe. Even more troubling, the Louisiana court was not informed that an Illinois court had made a child-custody determination, as required by section 204 of the UCCJEA, despite two years having passed. See 750 ILCS 36/204(d) (West 2014). Thus, the circuit court in exercising its temporary emergency jurisdiction erred in failing to follow the statutory criteria of sections 204(c) and 204(d) of the UCCJEA.

¶ 26                    II. Permanent Modification

¶ 27    Likewise, before a circuit court can properly modify a custody arrangement permanently, it must first meet certain statutory criteria detailed by the UCCJEA when exercising its subject-matter jurisdiction. The UCCJEA states that "a court of this State may not modify a child-custody determination made by a court of another state unless a court of this State has jurisdiction to make an initial determination" and either "the court of the other state determines it no longer has exclusive, continuing jurisdiction *** or that

11

a court of this State would be a more convenient forum" or "a court of this State or a court of the other state determines that the child, the child's parents, and any person acting as a parent do not presently reside in the other state."  750 ILCS 36/203 (West 2014).  Based on a plain reading of the statute, the UCCJEA requires a finding that the initial state has either ceded jurisdiction or that no party presently resides in that state (thus ending exclusive, continuing jurisdiction), and a finding that Illinois could make an initial custody determination under the UCCJEA.  Because both are of equal importance under the statute, and the UCCJEA is generally designed to end custody jurisdictional disputes between states, we begin by considering whether Louisiana should maintain exclusive, continuing jurisdiction.

¶ 28    When faced with a petition to modify another state's child-custody determination, Illinois courts must first decide whether or not the initial state retains exclusive, continuing jurisdiction.  If not, the court may then determine whether Illinois can meet the statutory criteria detailed by the UCCJEA needed to make an initial custody determination under the present circumstances.  If so, then the court can modify the other state's child-custody determination.  See also *Staats v. McKinnon*, 206 S.W.3d 532, 547-48 (Tenn. Ct. App. 2006) (applying the Tennessee version of the UCCJEA in a similar manner).

¶ 29    In this case, then, the first question is whether Louisiana retained exclusive, continuing jurisdiction.  Under section 202 of the UCCJEA, if a state has made a valid child-custody determination, that state will have "exclusive, continuing jurisdiction over the determination until" a court determines either that "the child, the child's parents, and

any person acting as a parent do not have a significant connection with" the state of jurisdiction or "that the child, the child's parents, and any person acting as a parent do not presently reside in" the state of jurisdiction. 750 ILCS 36/202(a) (West 2014). " 'So long as one parent, or person acting as a parent, remains in the state that made the original custody determination, only that state can determine when the relationship between the child and the left-behind parent has deteriorated sufficiently so that jurisdiction is lost.' " *Crouch v. Smick*, 2014 IL App (5th) 140382, ¶ 16 (quoting Robert G. Spector, *Uniform Child-Custody Jurisdiction and Enforcement Act (With Prefatory Note and Comments)*, 32 Fam. L.Q. 301, 340 n.81 (1998)).

¶ 30    Both Quinique and Anthony agree that the state of Louisiana made a valid child-custody determination and thus originally had exclusive, continuing jurisdiction over the determination.    Quinique maintains that the state of Louisiana still has exclusive, continuing jurisdiction over the determination because she is still a Louisiana resident. Anthony argues that the state of Louisiana lost exclusive, continuing jurisdiction because Quinique ceased to "presently reside" in Louisiana prior to this case.

¶ 31    Thus, we must determine whether or not Quinique presently resided in Louisiana as defined by section 202(a) of the UCCJEA to determine whether or not the circuit court properly exercised its authority over the child-custody determination. This determination is a question of law that we review *de novo*. See *McCormick v. Robertson*, 2014 IL App (4th) 140208, ¶ 15 (applying *de novo* standard of review in a case regarding subject-matter jurisdiction and the application of the UCCJEA); *McCormick v. Robertson*, 2015 IL 118230, ¶ 18 (applying *de novo* standard of review in reviewing the appellate

13

*McCormick* case).

¶ 32 The original drafters of the UCCJEA offered their interpretation of "presently reside" within the UCCJEA in the official comment to section 202 of the UCCJEA:

"2. Continuing jurisdiction is lost when the child, the child's parents, and any person acting as a parent no longer reside in the original decree State. The exact language of subparagraph (a)(2) was the subject of considerable debate. Ultimately the Conference settled on the phrase that 'a court of this State or a court of another State determines that the child, the child's parents, and any person acting as a parent do not presently reside in this State' to determine when the exclusive, continuing jurisdiction of a State ended. The phrase is meant to be identical in meaning to the language of the PKPA which provides that full faith and credit is to be given to custody determinations made by a State in the exercise of its continuing jurisdiction when that 'State remains the residence of ... ." The phrase is also the equivalent of the language 'continues to reside' which occurs in UIFSA § 205(a)(1) to determine the exclusive, continuing jurisdiction of the State that made a support order. The phrase 'remains the residence of' in the PKPA has been the subject of conflicting case law. It is the intention of this Act that paragraph (a)(2) of this section means that the named persons no longer continue to actually live within the State. Thus, unless a modification proceeding has been commenced, when the child, the parents, and all persons acting as parents physically leave the State to live elsewhere, the exclusive, continuing jurisdiction ceases.

14

The phrase 'do not presently reside' is not used in the sense of a technical domicile. The fact that the original determination State still considers one parent a domiciliary does not prevent it from losing exclusive, continuing jurisdiction after the child, the parents, and all persons acting as parents have moved from the State.

If the child, the parents, and all persons acting as parents have all left the State which made the custody determination prior to the commencement of the modification proceeding, considerations of waste of resources dictate that a court in State B, as well as a court in State A, can decide that State A has lost exclusive, continuing jurisdiction." Unif. Child Custody Jurisdiction & Enforcement Act, 9 U.L.A. § 202, cmt., at 674-75 (1999).

¶ 33 The First District considered the meaning of "presently reside" and its effect on exclusive, continuing jurisdiction in *In re Marriage of Akula*, 404 Ill. App. 3d 350 (2010). In that case, the appellate court held "that exclusive, continuing jurisdiction ceases when a court determines that the child, the parents, and all persons acting as parents physically left the decree state to live elsewhere." *Id.* at 360. The appellate court also held that "residing connotes *some degree of permanency* beyond a temporary sojourn." (Emphasis added.) *Id.* No Illinois case has determined the burden of proof under section 202. However, other states have held that "[t]he party asserting that the issuing state has lost exclusive continuing jurisdiction bears the burden of proof." *Brandt v. Brandt*, 268 P.3d 406, 408 (Colo. 2012); see also *Delgado v. Combs*, 724 S.E.2d 436, 443 n.30 (Ga. Ct. App. 2012) (citing *Brandt*).

¶ 34 The circuit court issued no finding regarding whether Quinique presently resides

15

in Louisiana. Thus, the circuit court failed to determine whether Louisiana maintains exclusive, continuing jurisdiction, and we must vacate its order granting Anthony's petition for permanent modification of custody. However, even if the circuit court had made this determination, we could not affirm it because Anthony failed to meet the burden of proof required to show that Quinique did not presently reside in Louisiana. At the November 18, 2013, hearing, in which Quinique was served with process for the matter now on appeal, Quinique stated that she resided in Boyce, Louisiana. Additionally, she later stated that she maintained water and electricity at her Boyce, Louisiana, residence at all times relevant to this case. While Anthony testified during the January 22, 2015, bench trial that he did not have any reason to believe Quinique lived in Louisiana at the start of the trial, he admitted that he had since learned that she had resided in Boyce, Louisiana, since the start of the trial. Further, in the petition for order of protection filed on October 30, 2013, Anthony wrote down the Boyce, Louisiana, address as Quinique's address and had it served to that address. Given that Quinique received the summons and appeared in Illinois, it would appear she maintained the Boyce, Louisiana, residence. Thus, we conclude that Quinique had resided in Boyce, Louisiana, for the proceedings below.

¶ 35   Anthony argues that Quinique ceased to presently reside in Louisiana because, prior to the start of this action, she had spent over a year residing in other jurisdictions. Quinique worked in North Dakota with her family from August 2012 to June 2013. She then worked in Pennsylvania from June 2013 to August 2013. Quinique lastly traveled to Texas for work from August 2013 until the end of October 2013. In the *Akula* decision,

the court held that a party cannot have more than one permanent residence for purposes of the UCCJEA. *Akula*, 404 Ill. App. 3d at 360. Thus, Anthony argues, under the *Akula* court's interpretation of section 202, if Quinique ever resided in a jurisdiction other than Louisiana, then Louisiana lost exclusive, continuing jurisdiction over this action.

¶ 36 We need not decide if we agree with the *Akula* court's interpretation of the UCCJEA because we find that Quinique only resided in Louisiana. According to Quinique, she had maintained her Louisiana address since 2008. The time spent in North Dakota, Pennsylvania, and Texas was for temporary work assignments. In other words, Quinique took temporary out-of-state work while maintaining a permanent residence in Louisiana. Anthony points to alleged statements by Quinique that she moved for permanent work, the October 27, 2013, police report listing Quinique's "Resident Address" as being located in Kennedy, Texas, and Quinique's statement that she hoped to move to Illinois or the St. Louis area as evidence that she no longer presently resided in Louisiana. However, none of these facts or allegations compares to the undisputed fact that Quinique maintained the Louisiana address while working elsewhere, especially when Anthony admitted that pipefitters like Quinique "go where the work is located" and that he "[didn't] have information that she had ever left her permanent residence" in Louisiana. Because Anthony admits that Quinique's work was transient in nature, that he had no information that she ended her permanent residence in Louisiana, and because he had only his testimony and the police report to show that any of Quinique's work-related moves were permanent, we cannot say that he has met his burden of proof as the party asserting that Louisiana no longer had exclusive, continuing jurisdiction.

17

¶ 37   Thus, we find that Louisiana maintains exclusive, continuing jurisdiction and, therefore, the circuit court did not properly exercise its jurisdiction in making a child-custody determination.  Because the circuit court failed to properly exercise its authority with regard to its permanent modification of the original custody determination, we vacate the circuit court's order granting Anthony's petition for permanent modification of custody.

¶ 38   Quinique also argues that the circuit court's custody determination was against the manifest weight of the evidence.  We have reviewed the evidence and cannot conclude that the circuit court's decision to award Anthony custody was against the manifest weight of the evidence.  Nevertheless, because the circuit court erred in its application of the UCCJEA, we must vacate the circuit court's decision awarding permanent custody.

¶ 39   While we must vacate the actions of the circuit court, we must also determine the status of this case going forward.  Quinique has suggested that, after vacating the decision, this court should order that the Louisiana decision be reinstated, that A.G. be returned to Quinique, and that all further actions regarding custody must be brought first in Louisiana.  However, we have found a similar case in which a Louisiana trial court assumed jurisdiction from Oklahoma under the temporary emergency jurisdiction provision despite failing to set a time period to obtain an Oklahoma order or communicate with the Oklahoma court.  In that case, the Court of Appeal of Louisiana, Third Circuit, remanded the action and ordered the trial court to comply with the UCCJEA temporary emergency jurisdiction requirements.  See *Brunt v. Abernathy*, 2011-705 (La. App. 3 Cir. 11/2/11); 79 So.3d 425.  The Louisiana court in that case also

18

ordered that the custody of the minor child be "maintained pursuant to temporary emergency jurisdiction, pending the trial court's compliance with [the UCCJEA]." *Id.* at 429-30. See also *In re L.W.*, 486 N.W.2d 486 (Neb. 1992) (reversing a Nebraska district court decision and remanding to the county court, with directions to comply with the UCCJEA, when the county court attempted to permanently modify a custody determination made by an Iowa court when Iowa retained exclusive, continuing jurisdiction). We hold that this course of action is warranted in this case as well. Thus, we vacate the actions of the circuit court and remand with instructions for the circuit court to follow the temporary emergency jurisdiction procedures of sections 204(c) and 204(d) of the UCCJEA. Specifically, the circuit court must set a time period during which Anthony must bring further action in Louisiana. The circuit court must also communicate with the Louisiana court regarding the state of the case in order to resolve the jurisdictional issues and set a timeline for further action. Custody of A.G. will remain with Anthony during the pendency of these actions pursuant to the November 20, 2013, order.

¶ 40                                    CONCLUSION

¶ 41    For the reasons stated, we affirm the circuit court's order granting temporary modification of custody of A.G. to Anthony, vacate the circuit court of Montgomery County's order granting Anthony's petition for modification, and remand with instructions.

¶ 42    Affirmed in part, vacated in part, and remanded with instructions.

2015 IL App (5th) 150078

NO. 5-15-0078

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| ANTHONY GORUP, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Montgomery County. |
| | ) | |
| v. | ) | No. 13-MR-143 |
| | ) | |
| QUINIQUE J. BRADY, | ) | Honorable |
| | ) | Douglas L. Jarman, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

**Opinion Filed:**     December 11, 2015

_____

**Justices:**     Honorable S. Gene Schwarm, P.J.

Honorable Thomas M. Welch, J., and
Honorable Bruce D. Stewart, J.,
Concur

_____

**Attorneys for Appellant**     Nathan A. Frisch, Aaron D. Calvert, Beavers, Graham & Calvert, 221 West Main Cross, P.O. Box 320, Taylorville, IL 62568

_____

**Attorneys for Appellee**     Bryan A. Drew, Jason D. Drew, Joshua N. McCain, Drew & Drew, P.C., 905 West Washington, Benton, IL 62812

_____