THOMAS, Judge.
Heather Maria McGonagle (“the mother”) [1] appeals from a judgment of the Baldwin Circuit Court awarding sole physical *1209 custody[2] of the parties’ child to Robert Allen McGonagle (“the father”). Because we determine that the circuit court lacked subject-matter jurisdiction to enter the judgment, we dismiss the appeal.

Background

The child was born on May 14, 2012. The mother and the father were divorced by a judgment of the circuit court in March 2013. The divorce judgment incorporated an agreement between the parties, in which they agreed that they would share joint legal custody of the child and that the mother would exercise sole physical custody of the ehild.
In April 2013, the father was deployed to Kyrgyzstan by the United States Air Force. He returned from his deployment in November 2013 and began to live in Fort Walton Beach, Florida. He testified that he lived by himself until March or April 2014, when he began to live with his girlfriend, LeeAnn. He and LeeAnn were married four months later. He continued to live in Fort Walton Beach until November 2014, when he moved to Eglin Air Force Base in Florida. He then moved to Houston, Texas, in June 2015.
The mother testified that she had left the marital residence in approximately August 2012, when she and the father separated, and had begun living with her parents in Foley, Alabama. She testified that, during that period, she and the child at least occasionally “stayed with” Roy Cruise. The location of Cruise’s residence is not clearly stated in the record, but it appears that it was located in Alabama. The mother stated that she had been engaged to many Cruise but that their relationship ended after four or five months. She testified that she and the child had begun living with Henry Centeno sometime “between late spring and summer” of 2013. When asked where Centeno lived, the mother testified: “Destín.... It’s in conjunction with Fort Walton.” The father testified that Centeno lived in Fort Walton Beach, Florida. The mother stated that she and the child had lived with Centeno for approximately nine months to one year and that she believed that their relationship had ended in late 2013.
The mother further testified that she began a relationship with Edward Arvizu in late January or early February 2014, but the father testified that she told him about her relationship with Arvizu a couple of weeks before he returned from his deployment in November 2013. The mother stated that she and the child had begun living with Arvizu in Crestview, Florida, when they began dating. The mother testified that she had dated Arvizu for approximately one month before they were married in March 2014. In April 2014, Arvizu was deployed to Afghanistan by the United States Army. The mother testified that her relationship with Arvizu had become troubled sometime during May or June 2014. Nevertheless, she and the child continued to stay in the marital residence while Arvizu was deployed. During that time, she and the child at least occasionally stayed with her friend, Jessica, at Jessica’s mother’s residence. The father testified that Jessica lived in Fort Walton Beach, Florida.
The mother testified that, toward the end of September 2014, she and the child began to live with Centeno again. Although the mother testified that Centeno had purchased a house since their previous separation, there was no evidence indicating that he had moved to Alabama from *1210 Florida.. Arvizu returned from his-¡deployment in October 2014, and he and the mother1 were divorced around that time. The mother and Centeno were married in February 2015.
The mother provided the following testimony upon examination by the father’s attorney at the hearing:
“Q: All right. And I’m going to try— some of this, I’ve covered, I’m going to—bear with me for a minute. I’m going to try to get—So you went from Eglin Ah* Force base .with [the father], -right?
.“A: ¡Yes.
‘Q: To Foley, to [Centeno’s] in Destín, to [Arvizu’s] in Crestview, and back to Foley?
“A: Nope.
“Q: Okay. Didn’t—you went straight from [Arvizu’s] to [Centeno’s]?
“A: ' Yes.
“Q: And then mixed in there was some staying some time—
“A: I spent a lot of time with Jessica and her family.
“Q: Yes. And with Roy Cruise. You stay there a.lot?
“A: Yes, we stayed together—
“Q: Then you stayed with your family some in Foley, I suppose?
“A: Yes, I visit my family quite often. I- would 'say twice a week—or twice a month, I visit my family.
“Q: All right. You know, I believe that you—also in August 2014, which would have been about the time—just shortly before the time that you were struggling with where to go, you also went to Hawaii with another man, didn’t you?
“A: . That was in 2013,
“Q: That was in 2013?
“A: I believe so.
“Q: Okay.
“A: I can’t remember the exact year. But yes, I did fly out to Hawaii with a friend of mine.
[[Image here]]
“Q: And you stayed with him for how long?
“A: A week.”
On November 12, 2014, the father petitioned the circuit court, seeking a modification of the custody arrangement set out in the divorce judgment. Among other things, the’ father alleged that “a material change in circumstances ha[d] occurred and it [wa]s in the best interest of the minor child that the father have ,.. sole [physical] custody.” He alleged that the mother’s lifestyle, specifically her decisions to live in multiple locations and to cohabit with men to whom she was not married, had prevented her from being able to provide a stable environment for the child.
Among other things, the father asked the circuit court to award him “legal and physical custody of the minor child or, in the alternative, that the joint custody continue with the father having [sole] physical custody.” The mother answered the father’s petition, admitting his allegations regarding the “ages; residences, marital status and children of the parties” and denying the other allegations made in his petition.
After discovery, the circuit court held a hearing on July 24, 2015. On July 28, 2015, the circuit court entered an order concluding that “the [m]other’s frequent home changes constitute a material issue of a continuing nature.” Among other things, the circuit court awarded the parties joint legal custody and awarded the father sole physical custody. The circuit court also ordered the parties to calculate child support and to submit the necessary forms within 14 days.
*1211 In response to the circuit court’s order, the mother filed a motion, arguing, among other things, that the circuit court lacked jurisdiction to modify the custody arrangement and stating: “Both of the parties had lived in Florida for more than six months preceding the filing of this action. Therefore, proper jurisdiction should have been the Florida courts.” She also argued that there was insufficient evidence to support the circuit court’s finding that a material change in circumstances had occurred, and she argued that the father had failed to meet the custody-modification standard set forth in Ex parte McLendon, 455 So.2d 863 (Ala.1984) (“the McLendon standard”).
The father responded to the mother’s motion and submitted to the circuit court excerpts from the mother’s deposition; those excerpts, containing examination by the father’s attorney, provide, in pertinent part:
“Q: Have you ever been to Hawaii?
“A: Yes.
“Q: When did you go to Hawaii?
“A: I don’t remember the exact time. Maybe August.
“Q: Of'14?
“A: Yes.

ti

“Q: And you went out there, you said, August of '14?
“A: Uh-huh.
“Q: Was that in between living at [Ar-vizu’s] and [Centeno’s], or was that while you were at [Centeno’s] or [Arvizu’s]?
“A: That was before [Centeno].
“Q: Were you still at [Arvizu’s] when you went out to Hawaii?
“A: No. That was before [Centeno] and I was together. It was before [Centeno] or [Arvizu] and I lived together.
“Q: Okay. Well, you said you went to Hawaii in August of 2014.
“A: It might have been 2013. I’m not sure. Let me think. Maybe 2014, yeah. “[The mother’s attorney]: 2014 was just six months ago. 2013 would have been a year-and-a-half ago.
“[The mother]: Maybe a year-and-a-half ago then.
“[The mother’s attorney]: It would have been while the two of you were separated, but the divorce had not been signed yet.
“[The mother]: No. We were already divorced. So I—
“[The father’s attorney]: I would rather get your' testimony, really, than your attorney. I want to know what you remember. And that’s okay, I understand you’re trying to remember.
“A: I’m just trying to remember dates, because they’re—I don’t remember exactly. I never thought I would have a use for remembering.
«
“Q: And you were living where at this time?
“A: I believe I was living with my parents.”
On September 25, 2015, the circuit court heard arguments on the mother’s motion and denied it that same day. The circuit court did not make any specific factual findings in its order denying the mother’s motion. On October 6, 2015, the circuit court entered a final judgment, which included an award of child support and in which it again found that the mother had made “frequent home changes” but did not otherwise recite any specific factual findings.[3]
The mother timely filed a notice of appeal, arguing: (1) that the circuit court did *1212 not have jurisdiction to enter its judgment and (2) that the custody arrangement should not have been modified because the McLendon standard was not met. Because we conclude that the circuit court lacked subject-matter jurisdiction to modify the original custody determination, we do not address the mother’s second argument.

Standard of Review

Whether the circuit court had subject-matter jurisdiction to modify its prior custody determination is a strictly legal question that is subject to de novo review. Winford v. Winford, 139 So.3d 179, 181 (Ala.Civ.App.2013). “The jurisdiction of an Alabama court to modify a prior custody determination depends on the provisions of the Uniform Child Custody Jurisdiction and Enforcement Act ..., Ala.Code 1975, § 30-3B-101 et seq.” Baker v. Baker, 25 So.3d 470, 472 (Ala.Civ.App.2009).
Whether a court has jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (“the UC-CJEA”), § 30-3B-101 et seq., Ala.Code 1975, potentially depends on the resolution of several factual questions. See Baker, 25 So.3d at 473-74 (discussing the requirements of the UCCJEA and summarizing the applicable evidence necessary to establish jurisdiction). “When evidence in a child custody case has been presented ore tenus to the trial court, that court’s findings of fact based on that evidence are presumed to be correct.” Ex parte Bryowsky, 676 So.2d 1322, 1324 (Ala.1996). “[W]e will not reverse unless the evidence so fails to support the determination that it is plainly and palpably wrong, or unless an abuse of the trial court’s discretion is shown.” Phillips v. Phillips, 622 So.2d 410, 412 (Ala.Civ.App.1993).

Analysis

On appeal, the mother argues that the circuit court did not have jurisdiction to enter its judgment because, she asserts, “neither party was a ‘bona fide resident’ of the State of Alabama” for six months next before the filing of the father’s petition, as is required by § 30-2-5, Ala.Code 1975. In response, the father correctly explains that § 30-2-5 applies to divorce proceedings and not to custody-modification proceedings. He therefore urges this Court to dismiss the mother’s appeal for failure to comply with Rule 28(a)(10), Ala. R.App. P.
However, ‘“jurisdictional matters are of such magnitude that we take notice of them at any time and do so even ex mero motu.’” Baker, 25 So.3d at 472 (quoting Nunn v. Baker, 518 So.2d 711, 712 (Ala.1987)). Therefore, we must decide whether the circuit court had subject-matter jurisdiction under the UCCJEA.
The UCCJEA provides, in pertinent part:
“(a) Except as otherwise provided in Section 30-3B-204, [Ala.Code 1975,] a court of this state which has made a child custody determination consistent with Section 30-3B-201 or Section 30-3B-203E, Ala.Code 1975,] has continuing, exclusive jurisdiction over the determination until:
“(1) A court of this state determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child’s care, protection, training, and personal relationships; or
“(2) A court of this state or a court of another state determines that the child, the child’s parents; and any person acting as a parent do not presently reside in this state.
*1213 “(b) A court of this state which has made a child custody determination and does not have continuing, exclusive jurisdiction under this section may modify that determination only of it has jurisdiction to make an initial determination under Section 30-3B-201.”
§ 30-3B-202, Ala.Code 1975.
The circuit court did not address the UCCJEA in its judgment, nor did it make any specific factual findings in support of its conclusion that it had jurisdiction to modify the original custody determination. “It is ... well established that in the absence of specific findings of fact, appellate courts will assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous.” Bryowsky, 676 So.2d at 1324. Thus, in order for the circuit court to conclude that it had continuing, exclusive subject-matter jurisdiction, it must have found that either the child or at least one of the parents presently resided in Alabama. See § 30-3B-202(a)(2). To the extent that the circuit court impliedly made such a finding, however, that finding is not supported by the record.
The father filed his modification petition on November 12, 2014. He testified that he had moved from Fort Walton Beach, Florida, to Eglin Air Force Base in Florida in November 2014 and then to Houston, Texas, in June 2015. It is therefore undisputed that the father was not residing in Alabama when he filed his petition or when the circuit court conducted the hearing. The mother testified that she and the child moved from Arvizu’s residence in Crestview, Florida, to Centeno’s residence in Fort Walton Beach, Florida, toward the end of September 2014. She married Cen-teno in February 2015, and no evidence was presented demonstrating that she or the child had moved since September 2014. At the hearing, the mother testified that she was- currently living in Fort Walton Beach, Florida. Thus, it is undisputed that the mother and child were not “presently resid[ing] in [Alabama]” when the father filed his petition or when the circuit court conducted its hearing. See § 30-3B-202(a)(2).
The circuit court should have therefore determined that it had lost continuing, exclusive subject-matter jurisdiction to modify its March 2013 custody determination under § 30-3B-202(a)(2). See Baker, 25 So.3d at 473.
“Once- a court loses continuing, exclusive jurisdiction to modify a custody determination, § 30-3B-202(b) provides that a trial court ‘may modify that determination only if it has jurisdiction to make an initial determination under Section 30-3B-201.’ Section 30-3B-201 provides:
“ ‘(a) Except as otherwise provided in Section 30-3B-204, [Ala.Code 1975,] a court of this state has jurisdiction to make an initial child custody determination only if:
“ ‘(1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;
“ ‘(2) A court of another state does not have jurisdiction under subdivision (1), or a court of the home state has declined to exercise jurisdiction on the ground -that this state is the more appropriate forum under Section 30-3B-207 or 30-3B-208, [Ala.Code 1975,] and:
“ ‘a. The child and the child’s parents, or the child and at least one *1214 parent or a person acting, as a parent, have a significant connection with this state other than mere physical presence; and
“‘b. Substantial evidence is available in this state concerning the child’s care, protection, training, and personal relationships;
“ ‘(3) All courts having jurisdiction under subdivision (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section 30-3B-207 or 30-3B-208; or
“‘(4) No court of any other state would have jurisdiction under the criteria specified in subdivision (1), (2), or (3).
“‘(b) Subsection (a) is the exclusive jurisdictional basis for making a child custody determination by a court of this state.
‘“(c) Physical presence of a child is not necessary or sufficient to make a child custody determination.’ ”
Baker, 25 So.3d at 473-74, Section 30-3B-102(7), Ala.Code 1975, defines “home state” as the “[t]he state in which the child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding.” If the circuit court found that the child had lived with a parent in Alabama for at least six consecutive months immediately before the father filed his modification petition, then it could have determined that it had jurisdiction under § 30-3B-201(a)(l), Ala.Code 1975. However, to the extent that the trial court impliedly made such a finding, that finding is not supported by the record.[4]
When the father filed his custody-modification petition, the mother and the child had lived in Florida for more than six consecutive months. The mother testified that she and the child left Alabama and began living in Fort Walton Beach, Florida, sometime in late spring or summer 2013. She and the child moved to Crest-wood, Florida, in late January or early February 2014. Finally, she and the child returned to Fort Walton Beach, Florida, in late September 2014. The father filed his modification petition in the circuit court on November 12, 2014. The evidence presented therefore demonstrates that the mother and the child had lived in Florida for more than six consecutive months immediately before the commencement of the custody-modification proceeding.
The father argues that the mother’s deposition testimony regarding her trip to Hawaii establishes that she and the child were residing in Alabama in August 2014 because she also testified that she believed that she was living with her parents in Foley, Alabama, when she made the trip to Hawaii. That testimony appears to be inconclusive, and contradictory testimony was also given.[5] However, even if supported by record, an implicit finding that the mother and the child were in Foley, Alabama, sometime in August 2014 does not compel the finding that the child lived with a parent in Alabama for at least six consecutive months immediately before the father filed his modification petition. There is no evidence in the record to sup *1215 port such a finding.[6] Instead, the record indicates that the mother and the child had resided primarily, if not exclusively, in Florida since the parties were divorced in March 2013.
In conclusion, at the time that the modification proceedings were commenced, the mother and the child had resided in Florida for more than six consecutive months. Alabama was no longer the home state of the child under § 30-3B-201(a)(l). Furthermore, a Florida court would have had subject-matter jurisdiction to make a child-custody determination under § 30-3B-201(a)(1). Therefore, the circuit court did not have subject-matter jurisdiction under § 30-3B-201(a)(2). Because the circuit court did not have continuing, exclusive subject-matter jurisdiction under § 30-3B-202, and because the circuit court did not have subject-matter jurisdiction under § 3Ó-3B-201, it did not have subject-matter jurisdiction to enter any judgment modifying the 2013 custody determination. See Baker, 25 So.3d at 475. Therefore, the judgment of the circuit court entered on October 6, 2015, is void. See id. “This court has a duty to dismiss an appeal that is taken from a void judgment because a void judgment will not support an appeal.” Id.
APPEAL DISMISSED.
THOMPSON, P.J., and PITTMAN, MOORE, and DONALDSON, JJ., concur.

. In this opinion, we refer to the mother using the name reflected on the notice of appeal and in many of the pleadings and documents filed in the circuit court; however, we note that the mother testified that she had remarried twice since the entry of the parties’ divorce judgment. The record reflects that her current surname is Centeno.

. The parties and the circuit court refer to the custody award as one of "primary physical custody.” We use the phrase "sole physical custody” throughout this opinion to conform to the language used in the custody statutes, § 30-3-150 etseq., Ala.Code 1975.

. The mother does not challenge the child-support award.

. An implicit finding that the alternative criteria set out in § 30-3B-201(a)(l) were satisfied would also be unsupported for the same reasons.

. The child’s paternal grandmother testified that she kept the child at the grandparents’ home in Prattville, Alabama, when the mother went to Hawaii and that the trip occurred while the father was deployed. It was undisputed that the father returned from his deployment in November 2013 and has not been deployed since.

. In his appellate brief, the father states that the mother testified that she "lived-with her parents quite often in Foley during all these times.” However,, in the testimony cited, by the father, the ..mother .stated that , she visited her family twice a month.