Rel: June 26, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2025-2026

_____

## CL-2025-0966

_____

## Ex parte A.I.F.-H. f/k/a A.I.F.

## PETITION FOR WRIT OF MANDAMUS

## (In re: T.B.E.

## v.

## A.I.F.)

## (Russell Juvenile Court: CS-18-900198.04)

PER CURIAM.

A.I.F.-H. f/k/a A.I.F. ("the mother") petitions this court for a writ of mandamus directing the Russell Juvenile Court ("the juvenile court") to dismiss or to transfer the underlying child-custody-modification action

commenced by T.B.E. ("the father") regarding K.B.E. ("the child"). We grant the petition in part and deny the petition in part.

Background

The child was born in 2018. In 2019, the juvenile court entered the initial child-custody determination relating to the child. On February 20, 2025, the parties entered into a custody-modification agreement relating to the child. Pursuant to that agreement, which was incorporated into a judgment entered by the juvenile court on February 21, 2025,[1] the mother was to exercise sole physical custody of the child during the school year, with the father visiting with the child every other weekend. The agreement further provided, in pertinent part: "The [m]other's relocation to the Ft. McGuire area in New Jersey or the surrounding area is accepted. The [f]ather's relocation to the state of Virginia or surrounding area is accepted." (Bold typeface and underlining omitted.)

---

[1]The judgment is not included in the materials attached to the petition or to the answer, but the parties agree that the judgment was entered on February 21, 2025, and that it incorporated their custody-modification agreement, so we accept that fact as true for the purposes of this mandamus proceeding. See Ex parte V.M., 377 So. 3d 526, 529 n.4 (Ala. Civ. App. 2022).

On August 23, 2025, the father filed in the juvenile court a verified custody-modification petition.[2]  In the petition, the father alleged that the mother and the child had relocated to Philadelphia, Pennsylvania, on or about April 9, 2025.  The father alleged that he was a resident of Alabama, but he also inconsistently alleged that he was a resident of Georgia.  The father claimed that Alabama had been the home state of the child within the six months preceding the date of the filing of the custody-modification petition and that the child had not resided in another state for a sufficient period to change his home state.  Accordingly, the father concluded that the juvenile court "retains jurisdiction over modification and enforcement" pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act ("the UCCJEA"), Ala. Code 1975, § 30-3B-101 et seq.

On September 8, 2025, the mother filed an answer to the custody-modification petition, asserting that she and the child had lived in

---

[2]Although the father labeled his petition as including a contempt claim, the body of the petition included only a custody-modification claim, so we consider the father's petition to be solely a custody-modification petition.  See Elizabeth Homes, L.L.C. v. Cato, 968 So. 2d 1, 8 (Ala. 2007) ("In determining the nature of a cause of action, [an appellate c]ourt looks to allegations in the body of the complaint, not the caption or label the party applies.").

Georgia after October 2024 and that they had resided there until they relocated to Philadelphia in April 2025. The mother attached to her answer a document showing that she had jointly leased an apartment in Georgia for one year, commencing on October 15, 2024, and documents indicating that she and the child had moved to Pennsylvania on April 9, 2025, and that she had subsequently enrolled the child in school there. The mother denied that the father was a resident of Alabama, maintaining that he was a resident of Georgia. The mother also attached to her answer a police report that indicated that the father resided in Columbus, Georgia. The mother denied that the juvenile court retained jurisdiction over the custody of the child pursuant to the UCCJEA.

On September 10, 2025, the mother filed a motion to dismiss the custody-modification action for, among other things, lack of subject-matter jurisdiction. In her motion to dismiss, the mother argued that the juvenile court did not have jurisdiction to modify the February 2025 child-custody determination because she and the child had left Alabama in October 2024 and because the father had been, at all material times, a resident of Georgia. On September 15, 2025, the father responded to the motion to dismiss, contending that the juvenile court retained

4

jurisdiction over the custody-modification action. On September 19, 2025, the mother filed a reply to the father's response in which she asserted that the father had never resided in Alabama and in which she reasserted that she and the child had left Alabama in October 2024. The mother maintained that Alabama was no longer the home state of the child and that the parties and the child had no significant connection to Alabama. While the motion to dismiss was pending,[3] the mother informed the juvenile court that she had commenced a child-custody proceeding in a Pennsylvania court. The mother amended her motion to dismiss to request that the juvenile court stay its proceedings and transfer the custody-modification action to the Pennsylvania court.

On October 15, 2025, the juvenile court summarily denied the mother's motion to dismiss and to transfer the case. The mother moved

_____

[3]On September 12, 2025, two days after the mother filed the motion to dismiss, the juvenile court entered an order purporting to deny a child-support motion filed by the mother, but the mother had not filed a child-support motion. That order did not dispose of the motion to dismiss, and the order seems to have been entered in error, but the mother fails to show how that error has prejudiced her, so we do not address the order further. See Blackmon v. W.S. Badcock Corp., 342 So. 2d 367, 372 (Ala. Civ. App. 1977) (holding that, in the absence of a showing that an order had prejudiced the rights of the petitioner, the order would not be vacated in a mandamus proceeding).

the juvenile court to reconsider the denial of her motion, arguing that the juvenile court had lost continuing exclusive jurisdiction to modify its prior child-custody determination. The mother maintained that Pennsylvania had become the home state of the child on October 9, 2025, and, therefore, that the Pennsylvania court had proper and exclusive jurisdiction over the custody dispute. The mother contended that the juvenile court had failed to communicate with the Pennsylvania court and to relinquish its jurisdiction to that court. The mother subsequently moved the juvenile court to stay its proceedings until the jurisdictional question could be finally resolved. On October 27, 2025, the juvenile court denied those motions.

<u>Issues</u>

On November 6, 2025, the mother filed a petition for the writ of mandamus.[4] In her petition, the mother primarily argues that the

---

[4]Although the mother did not file her petition for the writ of mandamus within 14 days from the entry of the October 15, 2025, order denying her motion to dismiss and to transfer, this court has jurisdiction over the petition because it involves subject-matter jurisdiction. See <u>Ex parte K.R.</u>, 210 So. 3d 1106 (Ala. 2016).

juvenile court failed to follow the UCCJEA by refusing to dismiss or to transfer the custody-modification action.[5]

Before addressing the merits of those arguments, we grant the father's motion to strike appendices K and Q through X filed by the mother in support of her mandamus petition. "[I]n a mandamus proceeding, [an appellate court] will not consider evidence not presented to the trial court." Ex parte Cincinnati Ins. Co., 51 So. 3d 298, 310 (Ala. 2010); see also Rule 21(a)(1)(G), Ala. R. App. P. "Because nothing indicates that [appendices K and Q through X] to which the father objects are a part of the record in the juvenile court, we conclude that the father's motion to strike is due to be granted," Ex parte K.A.S., 197 So. 3d 503, 507 (Ala. Civ. App. 2015), and we will not consider any statements referencing those appendices. Id. However, we deny the father's motion insofar as it seeks to strike appendix P, which is a copy of the apartment

---

[5]The mother also contends that the juvenile court violated the Uniform Interstate Family Support Act ("the UIFSA"), Ala. Code 1975, § 30-3A-101 et seq., which governs jurisdiction of child-support actions. However, neither party has asserted a claim for child support in the underlying custody-modification action, and the UIFSA does not apply to jurisdictional disputes involving child custody. See Ala. Code 1975, § 30-3D-104(b)(2). Because the UIFSA does not apply to this case, we do not address this argument further.

lease that the mother attached to her answer to the father's custody-modification petition, because it was presented to the juvenile court.

We also deny the father's motion insofar as it requests that the other attachments to the mother's mandamus petition -- appendices A through O -- be struck. The father argues that those attachments should be struck because they are unauthenticated and unverified; however, Rule 21(a)(1)(G), Ala. R. App. P., provides that a petition for the writ of mandamus shall include

> "[a]n appendix including copies of all parts of the record that are essential to understanding the matters set forth in the petition, such as the order or orders of which the petitioner seeks review, all court filings (by any party) directly connected to the order or orders, and any transcripts of proceedings that resulted in the order or orders."

Appendices A through O filed in support of the mother's mandamus petition fall within the scope of Rule 21(a)(1)(G), so they are properly before this court.

## The Motion to Dismiss

We first address the jurisdiction of the juvenile court over the father's custody-modification action. The materials before this court show that the mother filed a motion to dismiss the underlying custody-modification action on the basis that the juvenile court lacked jurisdiction

8

over the case under the UCCJEA. "The UCCJEA is a jurisdictional act that establishes subject-matter jurisdiction over child-custody proceedings." H.T. v. Cleburne Cnty. Dep't of Hum. Res., 163 So. 3d 1054, 1062 (Ala. Civ. App. 2014).

> "This court may review an order denying a motion to dismiss for lack of subject-matter jurisdiction under the UCCJEA via a petition for a writ of mandamus. See Ex parte Holloway, 218 So. 3d 853 (Ala. Civ. App. 2016).
>
>> " 'A writ of mandamus is an extraordinary remedy that requires a showing of: (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty on the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court.'
>
> "Ex parte McNaughton, 728 So. 2d 592, 594 (Ala. 1998). This court may issue a writ of mandamus compelling a trial court to dismiss a child-custody action if the trial court lacks subject-matter jurisdiction. Ex parte Holloway, supra."

Ex parte Gallant, 221 So. 3d 1120, 1122 (Ala. Civ. App. 2016). Whether a juvenile court has subject-matter jurisdiction under the UCCJEA ordinarily is a question of law that we review de novo. See T.R. v. Tuscaloosa Cnty. Dep't of Hum. Res., 419 So. 3d 558, 561 (Ala. Civ. App. 2024). Upon de novo review, this court applies the same analysis to determine UCCJEA jurisdiction as should have been applied by the

juvenile court.  See generally J.H. v. C.Y., 161 So. 3d 233, 239 (Ala. Civ.

App. 2014).

Under the UCCJEA, a juvenile court has jurisdiction to modify its

own prior child-custody determination.  See Ala. Code 1975, § 30-3B-202.

Section 30-3B-202 provides:

> "(a) Except as otherwise provided in [Ala. Code 1975, §] 30-3B-204, a court of this state which has made a child custody determination consistent with [Ala. Code 1975, §] 30-3B-201 or [§] 30-3B-203[,] has continuing, exclusive jurisdiction over the determination until:
>
> > "(1) A court of this state determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or
> >
> > "(2) A court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state.
>
> "(b) A court of this state which has made a child custody determination and does not have continuing, exclusive jurisdiction under this section may modify that determination only if it has jurisdiction to make an initial determination under [§] 30-3B-201."

In this case, the mother essentially asserted in her motion to dismiss that

the juvenile court lacked subject-matter jurisdiction over the custody-

modification action because it had lost continuing, exclusive jurisdiction over its prior child-custody determination pursuant to § 30-3B-202(a)(2).

In her motion to dismiss, the mother claimed that she, the child, and the father had not been residing in Alabama when the father filed his custody-modification petition. Section 30-3B-202(a)(2) literally provides that a court retains continuing exclusive jurisdiction until the court determines that the child and the parents do not presently reside in this state. When the father filed the custody-modification petition, no court had made such determination, but, in her motion to dismiss, the mother implicitly requested that the juvenile court make that determination when ruling on whether it had jurisdiction over the case. The juvenile court had an independent and mandatory duty to determine the residency of the parties and the child before proceeding with the case. See A.M.H. v. D.E.H., 376 So. 3d 536, 541 (Ala. Civ. App. 2022) ("[W]hen the UCCJEA is implicated, a trial court, in order to satisfy itself that it has subject-matter jurisdiction, should consult the UCCJEA and follow the procedures outlined therein, regardless of whether the parties have specifically directed the trial court to applicable sections of the UCCJEA."). The juvenile court could not rely on the fact that no previous

11

residency determination had been made as the basis for continuing to exercise jurisdiction over the case. If, upon inquiry, a court finds that the parents and the child did not reside in Alabama when the child-custody proceeding commenced, the court must, as a matter of law, determine that it has lost continuing, exclusive jurisdiction. See McGonagle v. McGonagle, 218 So. 3d 1208, 1213 (Ala. Civ. App. 2016); Baker v. Baker, 25 So. 3d 470, 473 (Ala. Civ. App. 2009) ("Once it was shown that the custodial parent, the noncustodial parent, and the children had moved from Alabama, pursuant to § 30-3B-202(a)(2), the [Russell Circuit C]ourt should have determined that it had lost continuing, exclusive jurisdiction to modify its [initial child-]custody determination.").

In ruling on the motion, the juvenile court should have applied the framework established by our supreme court in Ex parte Safeway Insurance Co. of Alabama, Inc., 990 So. 2d 344, 349-50 (Ala. 2008). The mother filed a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), Ala. R. Civ. P., which applies in juvenile cases. See Rule 1(B), Ala. R. Juv. P.; Moore v. Griffin, 256 So. 3d 1201, 1203 (Ala. Civ. App. 2018). In Ex parte Safeway, 990 So. 2d at 349-50, the supreme court explained that there are two types of challenges to jurisdiction that

a defendant can assert by a Rule 12(b)(1) motion -- a facial challenge and a factual challenge. A facial challenge attacks the jurisdictional allegations in the complaint, whereas a factual challenge disputes the underlying facts upon which jurisdiction is founded. Id. In this case, the mother challenged the underlying facts upon which the father based his jurisdictional allegations, so she made a factual challenge. Based on that factual challenge, the juvenile court had to "'"address the merits of the jurisdictional claim by resolving the factual disputes between the parties."'" Ex parte Safeway, 990 So. 2d at 350 (quoting Lindsey v. United States, 448 F. Supp. 2d 37, 42-43 (D.D.C. 2006), quoting in turn Erby v. United States, 424 F. Supp. 2d 180, 181 (D.D.C. 2006)).

Through their pleadings, the parties agreed that, when the custody-modification petition was filed, the mother and the child resided in Pennsylvania, so that fact was not in genuine dispute, and no evidence was required to prove it. See Howard v. Jordan, 390 So. 2d 1053, 1054 n.1 (Ala. 1980). However, the mother disputed that the father resided in Alabama when he filed his custody-modification petition, so the juvenile court had to resolve that factual dispute based on the evidence regarding the father's residency.

13

"'[T]he burden is on the plaintiff to prove that jurisdiction exists.'" Ex parte Safeway, 990 So. 2d at 352 (quoting OSI, Inc. v. United States, 285 F.3d 947, 951 (11th Cir. 2002)). Likewise, in UCCJEA cases, the burden is on the plaintiff to establish jurisdiction. See In re Marriage of Long & Borrello, 4 Wash. App. 2d 231, 242, 421 P.3d 989, 994 (2018). To carry this burden, the plaintiff must establish the "'"factual predicates of jurisdiction by a preponderance of the evidence."'" Ex parte Safeway, 990 So. 2d at 349 (quoting Lindsey, 448 F. Supp. 2d at 42, quoting in turn Erby, 424 F. Supp. 2d at 182). Once the mother asserted that the father was not residing in Alabama when he filed the custody-modification petition,[6] the burden rested on the father to present evidence proving the

_____

[6]In Ex parte Safeway, the defendant presented some evidence disputing subject-matter jurisdiction, but the supreme court did not hold that a defendant must first present evidence establishing a prima facie case that a trial court lacks subject-matter jurisdiction before the burden shifts to the plaintiff to prove that jurisdiction. In Ex parte Mobile County Board of Equalization, 369 So. 3d 1038, 1042 (Ala. 2022) (plurality opinion), the supreme court said: "Once a defendant has moved to dismiss a case for lack of subject-matter jurisdiction, the plaintiff is then required to establish the '"'factual predicates of jurisdiction by a preponderance of the evidence.'"'" (Quoting Ex parte Safeway, 990 So. 2d at 349.) Furthermore, Rule 12(h)(3), Ala. R. Civ. P., provides: "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Therefore, the mother did not have to produce evidence to support the allegations in her motion to dismiss to place the burden on

14

jurisdictional allegations in his custody-modification petition and to establish his residency in Alabama by a preponderance of the evidence.

The father did not present any evidence indicating that he was residing in Alabama when he commenced the custody-modification action. In responding to the mother's motion to dismiss, the father did not even address that issue or the applicability of § 30-3B-202(a)(2). The father did allege in one part of the custody-modification petition that he was a resident of Alabama, but the mother denied that allegation. Even though his petition was verified, the father could not have rested on the jurisdictional allegations in that pleading because, when a defendant raises a factual challenge in a Rule 12(b)(1) motion, the resolution of that challenge "requires consideration of evidence beyond the face of the complaint." Ex parte Safeway, 990 So. 2d at 350. "'"[T]he plaintiff's jurisdictional averments are entitled to no presumptive weight. ..."'" Id. (quoting Lindsey, 448 F. Supp. 2d at 43, quoting in turn Erby, 424 F. Supp. 2d at 181). "'[A] court deciding a Rule 12(b)(1) motion asserting a factual challenge "must go beyond the pleadings and resolve any disputed

---

the father to present evidence and to prove the factual predicates establishing subject-matter jurisdiction.

15

issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss."'" Ex parte Safeway, 990 So. 2d at 350 (quoting Lindsey, 448 F. Supp. 2d at 43, quoting in turn Phoenix Consulting, Inc. v. Republic of Angola, 216 F.3d 36, 40 (D.C. Cir. 2000)). Thus, the juvenile court could not have relied on the residency allegations in the father's custody-modification petition. Even if it could, the petition was self-contradictory, and it did not establish where the father resided at the time of the commencement of the custody-modification action.

In his answer to the mandamus petition, the father does not dispute the mother's assertion that he had never resided in Alabama, so we must accept that fact as true. See Ex parte Benford, 935 So. 2d 421, 426 (Ala. 2006). Accordingly, we agree with the mother that, because the father did not present any evidence indicating that he resided in Alabama, and because it was undisputed that the mother and the child resided in Pennsylvania, the juvenile court was required to determine that the parties and the child did not reside in Alabama when the custody-modification petition was filed and that it did not have continuing, exclusive jurisdiction to modify its prior child-custody determination under § 30-3B-202(a)(2). See Baker, supra.

16

However, that does not end the jurisdictional inquiry. Section 30-3B-202(b) provides that, if an Alabama court lacks continuing, exclusive jurisdiction, it may still modify its own prior child-custody determination if it has jurisdiction to make an initial custody determination under Ala. Code 1975, § 30-3B-201(a). That Code section provides, in pertinent part:

"Except as otherwise provided in [Ala. Code 1975, §] 30-3B-204, a court of this state has jurisdiction to make an initial child custody determination only if:

"(1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

"(2) A court of another state does not have jurisdiction under subdivision (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under [Ala. Code 1975, §] 30-3B-207 or [§] 30-3B-208, and:

"a. The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

"b. Substantial evidence is available in this state concerning the

17

child's care, protection, training, and personal relationships;

"(3) All courts having jurisdiction under subdivision (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under [§] 30-3B-207 or [§] 30-3B-208; or

"(4) No court of any other state would have jurisdiction under the criteria specified in subdivision (1), (2), or (3)."

The juvenile court was required to consider whether it could exercise jurisdiction over the case pursuant to § 30-3B-201. See A.M.H., supra.

Based on the judicial admissions in the pleadings, the juvenile court could not exercise jurisdiction over the case pursuant to § 30-3B-201(a)(1) because Alabama was no longer the home state of the child. See Ala. Code 1975, § 30-3B-102(7) (defining "home state" as "[t]he state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding"). The juvenile court also did not have significant-connection jurisdiction under § 30-3B-201(a)(2) because, at a minimum, the child and the parties, or at least one party, must have had a significant connection to this state. In his response to the motion to

dismiss, the father argued that the child had been enrolled in an Alabama school until April 9, 2025, and that "there is significant connection with the state and substantial evidence available in the state, if for no other reason than the child was a student in the state." However, even if the past enrollment of the child was sufficient to give the child a current significant connection to this state, which we need not decide, § 30-3B-201(a)(2) also requires that at least one of the parties have a significant connection to this state. The father did not allege or prove that either party had any ongoing connection to this state. The juvenile court did not receive any evidence indicating that a court of another state with UCCJEA jurisdiction had declined to exercise jurisdiction on the ground that the juvenile court was the more appropriate forum to determine the custody of the child, so § 30-3B-201(a)(3) clearly did not apply.

Section 30-3B-201(a)(4) applies when no state would have jurisdiction over a child-custody proceeding under subsections 30-3B-201(a)(1), (a)(2), or (a)(3). See Dorothy v. Dorothy, 88 Ark. App. 358, 365, 199 S.W.3d 107, 112 (2004) (construing similar UCCJEA provision). In her motion to dismiss, as amended, the mother generally contended that

the juvenile court could not exercise jurisdiction over the case because only a Pennsylvania court would have jurisdiction. That argument placed into question whether a Pennsylvania court would have jurisdiction over the case, thus precluding the juvenile court from exercising jurisdiction under the catchall provision in § 30-3B-201(a)(4).

Based on the judicial admissions in the pleadings, at the time of the commencement of the underlying proceeding, the child had not been residing in Pennsylvania for six consecutive months, so Pennsylvania was not his home state, see 23 Pa. Cons. Stat. § 5402, and a Pennsylvania court could not have exercised home-state jurisdiction under 23 Pa. Cons. Stat. § 5421(a)(1), its version of § 30-3B-201(a)(1). However, in supporting her motion to dismiss, the mother alleged that, since the child had moved to Pennsylvania in April 2025 and had established a permanent residence there, "[t]he child's daily activities, medical and dental care ... are now centered in Philadelphia, Pennsylvania." The mother further alleged in her motion to dismiss, as amended, that the child had "enrolled in school, [had] participate[d] in community-based activities, and ha[d] formed meaningful relationships within the community." Those allegations, which the father did not dispute, raised

20

the question whether a Pennsylvania court would have had significant-connection jurisdiction under § 5421(a)(2), Pennsylvania's version of § 30-3B-201(a)(2), thereby precluding the juvenile court from exercising jurisdiction over the case pursuant to § 30-3B-201(a)(4).

Again, under the Ex parte Safeway framework, the burden was on the father to prove by a preponderance of the evidence the factual predicates for jurisdiction, including that a Pennsylvania court would not have had significant-connection jurisdiction over a custody-modification proceeding. The father did not present any evidence proving that a Pennsylvania court would have lacked significant-connection jurisdiction when the custody-modification petition was filed. Based on Ex parte Safeway, "[w]hen a defendant seeks from this Court a writ of mandamus directing a trial court to dismiss an action for lack of subject-matter jurisdiction, the defendant establishes a clear legal right to dismissal if the plaintiff has failed to prove subject-matter jurisdiction below." Ex parte Mobile Cnty. Bd. of Equalization, 369 So. 3d 1038, 1042 n.4 (Ala. 2022) (plurality opinion). Because the father failed to prove that the juvenile court could exercise jurisdiction under § 30-3B-201(a)(4), on our de novo review of the motion, see T.R., supra, we must conclude that the

mother has established a clear legal right to dismissal of the underlying custody-modification action.

The juvenile court refused to grant the mother's motion to dismiss, and she has no other adequate remedy. This court has jurisdiction over the mandamus petition. See Ala. Code 1975, § 12-3-11. Thus, the mother has satisfied all the elements necessary for obtaining mandamus relief, and we issue the writ of mandamus to direct the juvenile court to vacate its order denying her motion to dismiss and to enter an order dismissing the underlying case.[7]

### The Motion to Transfer

We deny that part of the mother's mandamus petition requesting a writ of mandamus compelling the juvenile court to transfer the case. In her amended motion to dismiss, the mother asserted that she had commenced a child-custody proceeding in a Pennsylvania court in October 2025. The mother argued that Ala. Code 1975, § 30-3B-207,

---

[7]Based on this disposition, we pretermit any discussion of the mother's arguments that the juvenile court violated the Parental Kidnapping Protection Act, 28 U.S.C. § 1738A(d), by exercising jurisdiction over the case after being notified by her that she had commenced a child-custody proceeding in Pennsylvania and that, based on that information, the juvenile court should have stayed its proceedings and communicated with the Pennsylvania court.

22

required the juvenile court to transfer the case to the Pennsylvania court. However, § 30-3B-207(a) authorizes an Alabama court with UCCJEA jurisdiction only to decline to exercise its jurisdiction when it determines that it is an inconvenient forum and that a court of another state is a more appropriate forum. See Ramsey v. Ramsey, 995 So. 2d 881, 884 (Ala. Civ. App. 2008). Section 30-3B-207(c) provides that, upon such determination, the Alabama court should stay its proceedings to allow the other state court to proceed. Section 30-3B-207 does not provide any mechanism by which an Alabama court may transfer a case to the court of another state.

We have determined that the juvenile court lacked UCCJEA jurisdiction, so § 30-3B-207 does not even apply. Thus, the mother has not proven that the juvenile court erred in failing to follow § 30-3B-207, and, thus, she has not established a clear legal right to an order granting her request to transfer.

Conclusion

Based on the foregoing, we grant the mother's petition for the writ of mandamus in part, and we direct the juvenile court to vacate its order denying the mother's motion to dismiss and to enter an order dismissing

the underlying custody-modification action. We deny the mother's petition for the writ of mandamus insofar as it requests that this court order the juvenile court to transfer the case.

PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.

Edwards, Hanson, and Fridy, JJ., concur.

Moore, P.J., concurs specially, with opinion.

Bowden, J., dissents, with opinion.

MOORE, Presiding Judge, concurring specially.

I concur in all aspects of the main opinion. I write specially to encourage trial courts to affirmatively require the parties to present evidence regarding subject-matter jurisdiction before making any determination on that issue.

In the underlying case, A.I.F.-H. ("the mother") filed a motion to dismiss the complaint filed by T.B.E. ("the father"), arguing that the Russell Juvenile Court ("the juvenile court") lacked jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act ("the UCCJEA"), Ala. Code 1975, § 30-3B-101 et seq., thereby placing the burden on the father to present evidence establishing the factual predicates for UCCJEA jurisdiction. The father responded to the motion to dismiss with a memorandum, asserting, without evidence, that the juvenile court had UCCJEA jurisdiction. Without ordering the father to present any evidence to support his response or scheduling an evidentiary hearing, the juvenile court denied the motion to dismiss.

The Official Comment to Ala. Code 1975, § 30-3B-110, provides that "the parties must be given an opportunity to fairly and fully present facts and arguments on the jurisdictional issue before a determination is

made. This may be done through a hearing or, <u>if appropriate</u>, by affidavit or memorandum." (Emphasis added.) In cases involving factual challenges, it is not appropriate to decide a UCCJEA issue based on a memorandum unsupported by any evidence. As our opinion today makes clear, a factual challenge to UCCJEA jurisdiction must be resolved based on real evidence, which ordinarily requires an evidentiary hearing or, at the very least, the submission of affidavits or authenticated exhibits. Because the father failed to present any evidence showing that the juvenile court had subject-matter jurisdiction, the juvenile court should have dismissed the case.

I am concerned, however, that, in some cases, the failure of a plaintiff to properly respond to a motion to dismiss may lead to unfortunate results in other cases governed by the UCCJEA. For example, based on Ala. Code 1975, § 30-3B-204, a juvenile court may have temporary emergency jurisdiction to enter a protective custody order relating to an abandoned or abused child, but, if a parent files a motion to dismiss to which no adequate response is given, the juvenile court could, and should, dismiss the case for lack of subject-matter jurisdiction, which would leave the child unprotected.

To avoid that problem, I believe that, when a Rule 12(b)(1), Ala. R. Civ. P., motion is filed in a child-custody case based on the UCCJEA, the trial court should follow the directives of this court and make its own jurisdictional inquiry. See A.M.H. v. D.E.H., 376 So. 3d 536, 541 (Ala. Civ. App. 2022) ("[W]hen the UCCJEA is implicated, a trial court, in order to satisfy itself that it has subject-matter jurisdiction, should consult the UCCJEA and follow the procedures outlined therein, regardless of whether the parties have specifically directed the trial court to applicable sections of the UCCJEA." (emphasis added)). If a trial court determines that there is a factual dispute regarding whether it has UCCJEA jurisdiction, the trial court should order the plaintiff to submit evidence on that issue, to which the defendant may respond, or the trial court should schedule an evidentiary hearing to adjudicate that factual dispute. Through that procedure, the trial court can better ensure that the threshold jurisdictional issue will be decided based not on the arguments of the parties but on a preponderance of the evidence before it. I do not mean to suggest that the juvenile court erred in this case by failing to schedule an evidentiary hearing that neither party requested or that it erred in failing to order the father to supplement his response

27

to the motion to dismiss with evidence. I only remark that, had it done so, its jurisdictional determination may have been properly supported, and the outcome of the case may have been different.

BOWDEN, Judge, dissenting.

I respectfully dissent.

I. The mother primarily relied on AI-generated hallucinations and misrepresentations of holdings in real cases

Rule 21(a)(1)(F), Ala. R. App. P., requires petitioners to include "[a] statement of the reasons why the writ should issue, with citations to the authorities and the statutes relied on" in a petition for the writ of mandamus. Four of the five cases cited by A.I.F.-H. ("the mother") in her petition appear to be "hallucinations" from an online artificial-intelligence ("AI") tool and misrepresentations of holdings in real cases. One "case," cited as "Ex parte Holloway, 992 So. 2d 521, 524 (Ala. 2008)," does not exist -- the reporter citation is to a case styled Display South, Inc. v. Graphics House Sports Promos., Inc., 992 So. 2d 510 (La. Ct. App. 2008), a Louisiana case concerning a class-action lawsuit alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. The mother also provides a "quote" from Ex parte Siderius, 144 So. 3d 319 (Ala. 2013), purporting to represent our supreme court's holding in that case; however, the quoted material cannot be found in that case or, to my knowledge, in any other case. Two other cases the mother cited are real cases, but the holdings the mother attributed to them are not

accurate representations of the discussion of the issues in those cases. The only real case the mother accurately cited concerned a general proposition of law; however, general propositions of law are not considered supporting authority. See Herring v. Maddox, 336 So. 3d 662, 666 (Ala. Civ. App. 2021).

This court has said: "'[A petitioner's] failure to cite authority supporting [his or] her arguments, as required by Rule 21, [Ala. R. App. P.,] provides this Court an ample basis for refusing to consider those arguments, and [his or] her petition could properly be denied on that basis.'" Ex parte J.M.S., 303 So. 3d 155, 158 (Ala. Civ. App. 2020)(citation omitted). Our supreme court recently dismissed an appeal as a sanction for the widespread, improper use of AI in the plaintiffs' briefs in Ibach v. Stewart, [Ms. SC-2025-0106, Apr. 24, 2026] ___ So. 3d ___, ___ (Ala. 2026). That court succinctly framed the problem of AI-generated hallucinations in court filings:

> "This kind of egregious conduct cannot be tolerated in a judicial system whose purpose is to pursue truth and justice, but whose resources are already strained almost to the maximum. This Court -- indeed, every court within our judicial system -- must be able to trust the submissions of attorneys who practice before it. Otherwise, the precious resources available to us will eventually be strained to the breaking point."

30

Id. at ___. The court further explained that, whether or not AI-generated hallucinations are intentionally, recklessly, or negligently presented to the court by a party, the result is same -- "the wasteful expenditure of precious resources by both the opposing party and the courts." Id. at ___.

I recognize that this court may take notice of jurisdictional matters ex mero motu, see Gunnison-Mack v. Alabama State Pers. Bd., 923 So. 2d 319, 320 (Ala. Civ. App. 2005), and that our review is not limited to the grounds specifically raised in a mandamus petition when subject-matter jurisdiction is implicated. See Ex parte Thompson Tractor Co., 227 So. 3d 1234, 1239 (Ala. Civ. App. 2017). However, the mother bears the burden to demonstrate that she is entitled to the extraordinary remedy of a writ of mandamus. See Ex parte Siderius, 144 So. 3d at 327.

The mother's petition should have been dismissed for failing to comply with Rule 21(a)(1)(F). It does not appear that the mother has provided any supporting authority as to why the extraordinary remedy of the writ of mandamus should issue when nearly all the caselaw presented in support of the mother's arguments appear to be AI-generated hallucinations and misrepresentations of holdings in real

cases. Granting the mother's petition sets an unfortunate precedent that parties are free to submit fake case citations without any repercussions.

II.     There is a tension in our caselaw regarding the interpretation of § 30-3B-202(a)

This court has, in some of our decisions, strayed from interpreting § 30-3B-202(a), Ala. Code 1975, a section of Alabama's version of the Uniform Child Custody Jurisdiction and Enforcement Act ("the UCCJEA"), § 30-3B-101 et seq., Ala. Code 1975, according to its plain meaning, resulting in inconsistent caselaw. This is another one of those cases.

A.     The plain meaning of § 30-3B-202(a)

The job of this court is to say what the law is, not to say what it should be. See DeKalb Cnty. LP Gas Co. v. Suburban Gas, Inc., 729 So. 2d 270, 276 (Ala. 1998). "'Words must be given their natural, ordinary, commonly understood meaning, and where plain language is used, the court is bound to interpret that language to mean exactly what it says.'" Pruitt v. Oliver, 331 So. 3d 99, 111 (Ala. 2021)(quoting Ex parte State Dep't of Revenue, 683 So. 2d 980, 983 (Ala. 1996)); see also DeKalb Cnty., 729 So. 2d at 275-76. Furthermore, Alabama follows the rule against surplusage; that is, "'[t]here is a presumption that every word, sentence,

or provision [of a statute] ... has some force and effect and ... that no superfluous words or provisions were used.' <u>Barnett v. Panama City Wholesale, Inc.</u>, 312 So. 3d 754, 757 (Ala. 2020) (citations omitted)." <u>Lang v. Cabela's Wholesale, LLC</u>, 371 So. 3d 228, 234-35 (Ala. 2022); cf. <u>Feliciano v. Department of Transportation</u>, 605 U.S. 38, 51-52 (2025) ("[T]he surplusage canon is primarily a tool of linguistic interpretation, reflecting an assumption applicable to 'all sensible writing: Whenever a reading arbitrarily ignores linguistic components or inadequately accounts for them, the reading may be presumed improbable.'" (quoting Antonin Scalia & Bryan A. Garner, <u>Reading Law: The Interpretation of Legal Texts</u> 174 (Thomson/West 2012))). "[J]urisdiction of an Alabama court over child-custody matters is determined as of the time of the filing of the action." <u>T.B. v. T.A.P.</u>, 979 So. 2d 80, 86 n.1 (Ala. Civ. App. 2007); see § 30-3B-202, Ala. Code 1975, Official Comment.

In light of the aforementioned principles of statutory construction, this court should interpret § 30-3B-202(a) to mean exactly what it says -- a trial court that has made a child-custody determination consistent with § 30-3B-201 or § 30-3B-203, Ala. Code 1975, has continuing, exclusive jurisdiction over that determination <u>until</u> either § 30-3B-

33

202(a)(1) or (a)(2) is satisfied. See <u>Merriam-Webster's Collegiate</u> <u>Dictionary</u> 1373 (11th ed. 2020) (defining "until" as "a function word to indicate continuance (as of an action or condition) <u>to a specified time</u>" (emphasis added)). In other words, an Alabama court continues to have jurisdiction over its previous child-custody determination if, when a petition seeking to modify that determination is filed, an appropriate court has not yet made a determination regarding jurisdiction under § 30-3B-202(a)(1) or (a)(2). Thus, under the plain language of § 30-3B-202, a trial court does not automatically lose jurisdiction over its previous child-custody determination when the child and the parents no longer reside in Alabama. Nor does a trial court lack jurisdiction to modify its previous child-custody determination if, when a petition seeking to modify that determination is filed, an appropriate court has not yet made a determination under § 30-3B-202(a)(1) or (a)(2). Many of our sister states have reached this same conclusion.[8]

_____

[8]Appellate courts in the following states have adopted a version of the UCCJEA that is substantially similar, in relevant part, to Alabama's version of the UCCJEA, appear to apply the same principles of statutory construction, and, when determining jurisdiction over a child-custody action under their state's UCCJEA provision corresponding to § 30-3B-202(a), Ala. Code 1975, have reached the following outcomes:

Florida, see <u>Aluise v. Spanos</u>, 424 So. 3d 513, 519 (Fla. Dist. Ct. App. 2025)("In sum, Pennsylvania retained exclusive, continuing jurisdiction <u>until the Florida court determined</u> that the child and [p]arents presently reside in Florida under [the section of Florida's version of the UCCJEA corresponding to § 30-3B-202(a)(2)]. <u>At that point</u>, jurisdiction transferred to Florida and [the] [p]arents were entitled to bring a modification petition" of the Pennsylvania child-custody determination in Florida. (emphasis added; footnote omitted)).

Pennsylvania, see <u>OMalley v. Isquierdo</u>, 345 A.3d 321, 328 (Pa. Super. Ct. 2025)("'If a Pennsylvania trial court with jurisdiction enters an order awarding custody, this state will retain "exclusive, continuing jurisdiction" <u>unless and until</u> certain conditions occur.'" "In defining the 'commencement' of a 'child custody proceeding,' pursuant to [the section of Pennsylvania's version of the UCCJEA corresponding to § 30-3B-202], this Court has concluded that 'the trial court must rely upon the factual circumstances as they existed <u>when the modification petition was filed</u>.'" (citations omitted; emphasis added)).

Colorado, see <u>R.W. v. People ex rel. E.W.</u>, 523 P.3d 422, 427 (Colo. 2022)("A court that has obtained initial jurisdiction to adjudicate a child-custody proceeding under the UCCJEA <u>does not automatically lose jurisdiction</u> under [the section of Colorado's version of the UCCJEA corresponding to § 30-3B-202(a)(2)] by virtue of all parties leaving the state." (emphasis added)).

Arizona, see <u>Monique B. v. Duncan</u>, 245 Ariz. 371, 376, 429 P.3d 1165, 1170 (Ct. App. 2018)("The text of the UCCJEA provides that the original state issuing a 'child custody determination' retains 'exclusive, continuing jurisdiction over the determination <u>until</u>' a subsequent event divests that original state court of jurisdiction." "Even after the parties move away from the original state, <u>a determination by the original state that it no longer is exercising exclusive, continuing jurisdiction applies prospectively</u> and does so only after an express judicial determination." (quoting the section of Arizona's version of the UCCJEA corresponding to § 30-3B-202(a); emphasis added)).

35

Nevada, see <u>Kar v. Kar</u>, 132 Nev. 636, 639, 378 P.3d 1204, 1206 (2016)("<u>Once it determined</u> that the child and the child's parents no longer resided in Nevada, the [Nevada] district court lost exclusive, continuing jurisdiction under [the section of Nevada's version of the UCCJEA corresponding to § 30-3B-202(a)]." (emphasis added; emphasis omitted)).

Hawaii, see <u>Beam v. Beam</u>, 126 Haw. 58, 61, 266 P.3d 466, 469 (Ct. App. 2011)("The family court's jurisdiction <u>did not automatically end</u> once [the parents] and the [c]hildren moved out of state." (emphasis added)).

Illinois, see <u>In re Marriage of Akula</u>, 404 Ill. App. 3d 350, 360, 935 N.E.2d 1070, 1078, 343 Ill. Dec. 842, 850 (2010)("The drafters of the UCCJEA intended that exclusive, continuing jurisdiction ceases <u>when a court determines</u> that the child, the parents, and all persons acting as parents physically left the decree state to live elsewhere." (emphasis added)).

New Mexico, see <u>State ex rel. Child., Youth & Fams. Dep't v. Donna J.</u>, 139 N.M. 131, 135, 129 P.3d 167, 171 (Ct. App. 2006)("Although the [Official] Comment [to the UCCJEA] stresses the importance of physical presence to exclusive, continuing jurisdiction, the UCCJEA language <u>specifically requires action</u> by either the home or another state before exclusive, continuing jurisdiction in the home state ceases. ... Because no determination under Section 202 [of New Mexico's version of the UCCJEA, which corresponds to § 30-3B-202(a)] was made in this case, the Texas court <u>did not automatically lose its exclusive, continuing jurisdiction</u> when [the] [f]ather died." (emphasis added)).

Texas, see <u>In re Lewin</u>, 149 S.W.3d 727, 736 (Tex. App. 2004)("A court's exclusive continuing jurisdiction <u>does not vanish immediately</u> once all the parties leave the state." (emphasis added)).

But see <u>In re A.R.K.-K.</u>, 142 Wash. App. 297, 304-05, 174 P.3d 160, 164 (2007)("[The mother] suggests ... that once established, jurisdiction continues until a court <u>finds</u> that the parties have relocated. This is

36

B.    The inconsistency in our caselaw regarding § 30-3B-202(a)

Unfortunately, our caselaw does not consistently interpret § 30-3B-202(a) to mean what it says. In some cases, this court appears to have held that a trial court's continuing, exclusive jurisdiction under § 30-3B-202(a) <u>automatically</u> terminated when the child and both parents moved out of state, even though an appropriate court had not determined that the parties "d[id] not presently reside" in Alabama when the modification action was commenced. See, e.g., <u>S.C. v. J.T.C.</u>, 47 So. 3d 1253, 1255 (Ala. Civ. App. 2010) ("The … judgment adjudicating the paternity of the child and determining the custody of the child gave the juvenile court continuing exclusive jurisdiction over custody matters relating to the child. <u>See</u> § 30-3B-202, Ala. Code 1975. That continuing jurisdiction ended when the child and the parents no longer resided in Alabama."); <u>C.J.L. v. M.W.B.</u>, 868 So. 2d 451, 453 (Ala. Civ. App. 2003) ("The mother argues that the trial court lost its continuing exclusive jurisdiction when she, the last family member to reside in Alabama, moved to Georgia to be closer to the children. Indeed, the UCCJEA makes very clear that a

---

incorrect. It is the fact of relocation, rather than any formal finding, that controls.").

court of this state no longer has continuing jurisdiction when neither the child nor his or her parents reside in this state.").

In other cases, this court appears to have held that a trial court lost subject-matter jurisdiction at some point in a child-custody action even when there was no indication that an appropriate court had made a determination pursuant to § 30-3B-202(a)(1) or (a)(2) when the child-custody action was commenced. See McGonagle v. McGonagle, 218 So. 3d 1208, 1213 (Ala. Civ. App. 2016) (dismissing the appeal as having been taken from a void judgment because the Baldwin Circuit Court "should have … determined that it had lost continuing, exclusive subject-matter jurisdiction" and because the circuit court did not have subject-matter jurisdiction under § 30-3B-201); Baker v. Baker, 25 So. 3d 470, 473 (Ala. Civ. App. 2009) (dismissing the appeal as having been taken from a void judgment because "the trial court should have determined that it had lost continuing, exclusive jurisdiction" to modify its previous child-custody determination and because the trial court did not have jurisdiction under § 30-3B-201).

We have also held in other cases that a court's continuing, exclusive jurisdiction persists until an appropriate court makes a determination

38

under either § 30-3B-202(a)(1) or § 30-3B-202(a)(2). See, e.g., Ex parte K.W., 293 So. 3d 930, 935 (Ala. Civ. App. 2019)(holding that trial court no longer had continuing, exclusive jurisdiction under § 30-3B-202(a)(1) because of the trial court's findings in previous judgment); Ex parte Bullard, 133 So. 3d 900, 903 (Ala. Civ. App. 2013)(denying petition for writ of mandamus because, "pursuant to § 30-3B-202, the Coffee Juvenile Court would have continuing exclusive jurisdiction over [its previous] child-custody determination unless a court of this state were to determine that one of the conditions for termination of that jurisdiction exists" and noting that "there is no information in the attachments indicating that a court of this state has done so" (emphasis added)); R.W. v. G.W., 2 So. 3d 869, 872-73 (Ala. Civ. App. 2008)(holding that, under a Georgia statute substantially similar to § 30-3B-202, "the Georgia court would have exclusive, continuing jurisdiction over the initial child-custody determinations until it determined that 'neither the child nor the child's parents or any person acting as a parent has a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships'" and noting that "[n]othing in the record

reflects that the Georgia court has made such a determination" (emphasis added)); Davis v. Blackstock, 47 So. 3d 796, 799 (Ala. Civ. App. 2007)("Under subsection (a)(2) [of Tenn. Code Ann. § 36-6-217, a part of Tennessee's version of the UCCJEA that corresponds to § 30-3B-202(a)(2),] the Tennessee trial court loses continuing, exclusive jurisdiction once a court of another state determines that the child, the child's parents, and any person acting as a parent no longer 'presently' reside in Tennessee." (emphasis added)), rev'd on other grounds, Ex parte Blackstock, 47 So. 3d 801 (Ala. 2009).

C. Resolving the inconsistency in our caselaw

The main opinion acknowledges that § 30-3B-202(a)(2) "literally provides that a court retains continuing exclusive jurisdiction until the court determines that the child and the parents do not presently reside in this state." ___ So. 3d at ___. Nonetheless, the main opinion finds that the juvenile court "had an independent and mandatory duty to determine the residency of the parties and the child before proceeding with the case." Id. at ___. I cannot find a basis in the text of the UCCJEA for imposing such a duty on our trial courts. I am also concerned that it will lead trial courts to act outside of their role as independent arbiters of the

40

evidence and arguments presented to them. Trial judges are not investigators. The litigants are responsible for providing the trial court with the evidence and argument needed to make rulings.

Adopting a plain-meaning interpretation of § 30-3B-202(a) reflects the fundamental duty of the judiciary to avoid rewriting a statute and overriding the intent of our legislature. See Ala. Const. 2022, Art. III, § 42(c)("[T]he judicial branch may not exercise the legislative or executive power."). The plain meaning of § 30-3B-202(a) also specifically aligns with the purposes of the UCCJEA to "[a]void jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being" and to "[f]acilitate the enforcement of custody decrees of other states." Official Comment to § 30-3B-101, Ala. Code 1975. Because only one court can properly exercise jurisdiction over a child-custody determination at a time, adopting a plain-meaning interpretation of § 30-3B-202(a) would provide predictability and clarity to the bench and bar regarding which court has jurisdiction over a child-custody action.

III. There is tension in our caselaw regarding the standard for reviewing a motion to dismiss for lack of subject-matter jurisdiction

The main opinion concludes that, under Ex parte Safeway Insurance Co. of Alabama, Inc., 990 So. 2d 344, 349-50 (Ala. 2008), once the mother made a factual challenge to the juvenile court's subject-matter jurisdiction, T.B.E. ("the father") had to establish jurisdiction by a preponderance of the evidence. However, the burden-shifting framework of Ex parte Safeway has not been consistently applied by this court or our supreme court.

In a recent decision, our supreme court stated that: "This Court reviews de novo a trial court's ruling on a motion to dismiss for lack of subject-matter jurisdiction … The standard of review requires us to accept the allegations of the complaint as true and then to consider whether the plaintiff could possibly prevail on the complaint as pleaded." Riley v. Boles, 394 So. 3d 543, 546 (Ala. 2024). This court has also repeatedly applied that standard. See, e.g., Ex parte F.G., 383 So. 3d 402, 406 (Ala. Civ. App. 2023)("'"'"A ruling on a motion to dismiss [for lack of subject-matter jurisdiction] is reviewed without a presumption of correctness. … This Court must accept the allegations of the complaint as true. … Furthermore, in reviewing a ruling on a motion to dismiss we

42

will not consider whether the pleader will ultimately prevail but whether the pleader may possibly prevail."'"'" (quoting Ex parte Diefenbach, 64 So. 3d 1091, 1093-94 (Ala. Civ. App. 2010) (citations omitted))); Ex parte Bullard, 133 So. 3d at 902.

I first note that requiring the father to affirmatively establish that the juvenile court has continuing, exclusive jurisdiction contradicts the plain meaning of § 30-3B-202(a). There is nothing in § 30-3B-202 or any other provision of the UCCJEA that requires a party to affirmatively establish a trial court's continuing, exclusive jurisdiction -- that is because continuing, exclusive jurisdiction attaches when a trial court makes a child-custody determination pursuant to § 30-3B-201 or § 30-3B-203 and continues until a relevant court makes a determination under § 30-3B-202(a)(1) or (a)(2).

Furthermore, I have been unable to identify any case involving the UCCJEA in which this court or our supreme court has applied the Ex parte Safeway burden-shifting framework. In at least two cases decided after Ex parte Safeway, this court reviewed challenges to the trial court's subject-matter jurisdiction under the UCCJEA under a different framework -- i.e., whether the pleader may possibly prevail if the

allegations in the complaint are accepted as true. See, e.g., <u>Ex parte Bullard</u>, 133 So. 3d at 902; and <u>Ex parte Diefenbach</u>, 64 So. 3d. at 1093-94. It is no surprise then that the main opinion must look beyond the jurisdictional bounds of our state for a case to support the statement that "in UCCJEA cases, the burden is on the plaintiff to establish jurisdiction." ___ So. 3d at ___ (citing <u>In re Marriage of Long & Borrello</u>, 4 Wash. App. 231, 242, 421 P.3d 989, 994 (2018)).

In non-UCCJEA cases, neither our supreme court nor this court has consistently applied the <u>Ex parte Safeway</u> framework when reviewing a motion to dismiss for lack of subject-matter jurisdiction. Compare <u>Riley</u>, 394 So. 3d at 546 ("The standard of review requires us to accept the allegations of the complaint as true and then to consider whether the plaintiff could possibly prevail on the complaint as pleaded."); and <u>Ex parte Alabama-West Florida Conf. of United Methodist Church, Inc.</u>, 401 So. 3d 1123, 1133-37 (Ala. 2024)(holding that the petitioners in that case failed to meet their "heavy burden" to demonstrate that the trial court lacked subject-matter jurisdiction to adjudicate the underlying church-related disputes); and <u>Ex parte F.G.</u>, 383 So. 3d at 406 ("'"'"[I]in reviewing a ruling on a motion to dismiss [for lack of subject-matter

jurisdiction] we will not consider whether the pleader will ultimately prevail but whether the pleader may possibly prevail."'"'" (quoting <u>Ex parte Diefenbach</u>, 64 So. 3d at 1093-94 (other citations omitted))); with <u>Ex parte Mobile Cnty. Bd. of Equalization</u>, 369 So. 3d 1038, 1042 n.4 (Ala. 2022)(plurality opinion) ("When a defendant seeks from this Court a writ of mandamus directing a trial court to dismiss an action for lack of subject-matter jurisdiction, the defendant establishes a clear legal right to dismissal if the plaintiff has failed to prove subject-matter jurisdiction below.").

In his special writing, Presiding Judge Moore notes his concern that, when applying the burden-shifting framework of <u>Ex parte Safeway</u>, "the failure of a plaintiff to properly respond to a motion to dismiss may lead to unfortunate results in other cases governed by the UCCJEA." ___ So. 3d at ___ (Moore, P.J., concurring specially). To avoid those "unfortunate results," Presiding Judge Moore suggests that a trial court should "make its own jurisdictional inquiry," determine whether there is a factual dispute regarding its jurisdiction, and then either order the plaintiff to submit evidence or schedule an evidentiary hearing regarding

jurisdiction.[9] <u>Id.</u> at ___. Those "unfortunate results" are entirely avoidable if we simply apply the same standard for reviewing a motion to dismiss for lack of subject-matter jurisdiction in UCCJEA cases that we did in <u>Ex parte Bullard</u>, 133 So. 3d at 902, and <u>Ex parte Diefenbach</u>, 64 So. 3d at 1093-94. I would not impose new duties on our trial courts to resolve a problem of our own creation.

But even if <u>Ex parte Safeway</u>'s burden-shifting framework applies in the context of a motion to dismiss for lack of subject-matter jurisdiction under the UCCJEA, a defendant must first raise a factual dispute, i.e., must first present <u>evidence</u> that places a fact asserted in the compliant at issue. See <u>Ex parte Safeway</u>, 990 So. 2d at 350 (stating that resolving a factual challenge to the trial court's subject-matter jurisdiction "requires consideration of <u>evidence</u> beyond the face of the complaint"

---

[9]I note that the Official Comment to § 30-3B-110, Ala. Code 1975, cited by Presiding Judge Moore to demonstrate that "it is not appropriate to decide a UCCJEA issue based on a memorandum unsupported by any evidence," ___ So. 3d at ___, pertains to the requirement that parties be given the opportunity to present facts and legal arguments when they were unable to participate in court-to-court communications made pursuant to § 30-3B-110. There is no such requirement that parties must be given the opportunity to present facts and legal arguments as to whether a court has jurisdiction under § 30-3B-201 or § 30-3B-202, Ala. Code 1975.

(emphasis added)); cf. <u>Ex parte Covington Pike Dodge, Inc.</u>, 904 So. 2d 226, 229-30 (Ala. 2004)("[I]f the defendant makes a prima facie <u>evidentiary showing</u> that the Court has no personal jurisdiction, 'the plaintiff is then required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and he may not merely reiterate the factual allegations in the complaint.'" (quoting <u>Mercantile Capital, LP v. Federal Transtel, Inc.</u>, 193 F.Supp. 2d 1243, 1247 (N.D. Ala. 2002) (emphasis added))).

The mother's motion to dismiss was not verified and contained no evidence; thus, she presented no factual dispute to the trial court for it to resolve. It is undisputed that the mother and the child did not reside in Alabama when the father filed his verified petition, and the mother has consistently averred that the father lives in Georgia and has never lived in Alabama.[10] But there is no indication that the mother presented any <u>evidence</u> to the juvenile court as to the father's residency.

---

[10]The police report contained in the materials before us suggesting that the father lived in Georgia as of April 2025 -- three months before the underlying .04 action was commenced -- was part of the mother's unverified answer and is not evidence. See Rule 10(c), Ala. R. Civ. P. ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); <u>Kitchens v. Kitchens</u>, 424 So. 3d 438, 448 n.4 (Ala. Civ. App. 2025) ("[A]verments contained in the <u>unverified pleadings</u>

Even if we assume that the juvenile court considered evidence not put before it by the mother in her motion to dismiss, and even if we were to therefore conclude that the evidentiary burden shifted to the father, the father provided evidence in the form of his verified pleading. See Hensley v. Kanizai, 143 So. 3d 186, 191 (Ala. Civ. App. 2013). The only evidence in the materials before us regarding the father's residency when he filed his verified petition was the verified petition, in which the father inconsistently stated that he resided in both Alabama and Georgia. See id. at 193 ("[A] '[v]erified pleading[] constitute[s] [an] affidavit[] and [is] treated as evidence.'" (quoting Mead v. State, 449 So. 2d 1279, 1280 (Ala. Crim. App. 1984))). As I have stated, under Ex parte Safeway, resolving a factual challenge to the trial court's subject-matter jurisdiction "requires consideration of evidence beyond the face of the complaint." 990 So. 2d at 350 (emphasis added). That does not mean, as the main opinion suggests, that the juvenile court could not have considered the father's verified pleading, which constitutes an affidavit.

---

or motions filed by the former husband … clearly are not evidence …." (emphasis added)).

48

Additionally, the case number of the underlying action, CS-18-900198.04, indicates that it was at least the fifth action involving the parties and the child commenced in the juvenile court since 2018. The juvenile court was entitled to take judicial notice of the approximately seven years of evidence regarding the father's residency from those previous actions. See Ex parte DuPont De Nemours, Inc., 429 So. 3d 970, 986 (Ala. 2025)("'[W]hen a party refers to another proceeding or judgment of a court in his pleading before that same court, the court on motion to dismiss may take judicial notice of the entire proceeding.'" (quoting Lesley v. City of Montgomery, 485 So. 2d 1088, 1093 (Ala. 1986))).

Accordingly, even if the burden-shifting framework from Ex parte Safeway applies in the context of the UCCJEA, the juvenile court did not incorrectly decide that issue. The mother presented no evidence in support of her motion to dismiss, and the father presented evidence regarding his residency. Therefore, I cannot agree that the mother has demonstrated a clear legal right to relief.

IV.  Conclusion

The court's decision to grant the mother's petition in part and issue the writ of mandamus is unfortunate and further adds to our conflicting caselaw regarding continuing, exclusive jurisdiction under the UCCJEA and the standard that applies when reviewing a trial court's decision regarding a motion to dismiss for lack of subject-matter jurisdiction. For the reasons explained above, I respectfully dissent.